[No. S043227. Oct. 2, 1995.]

SORRELL TROPE et al., Plaintiffs and Appellants, v.
BERTRAM BERNARD KATZ, Defendant and Respondent.

## Counsel

Trope & Trope and Thomas Paine Dunlap for Plaintiffs and Appellants.

Lorraine C. Gollub, Gordon Law Offices, Frieda Gordon, Hill, Farrer & Burrill and Steven W. Bacon as Amici Curiae on behalf of Plaintiffs and Appellants.

Hart & Watters and Thomas L. Watters for Defendant and Respondent.

Adrian Van Rijs as Amicus Curiae on behalf of Defendant and Respondent.

## Opinion

**MOSK, J.**—In this appeal we consider whether an attorney who chooses to litigate in propria persona rather than retain another attorney to represent him in an action to enforce a contract containing an attorney fee provision can nevertheless recover "reasonable attorney's fees" under Civil Code section 1717 (hereafter section 1717) as compensation for the time and effort expended and the professional business opportunities lost as a result. We shall conclude that such an attorney litigant cannot recover such fees under section 1717, and hence that the judgment of the Court of Appeal so holding must be affirmed. Were we to construe the statute otherwise, we would in effect create two separate classes of pro se litigants—those who are attorneys and those who are not—and grant different rights and remedies to each. We find no support for such disparate treatment either in the language of section 1717, in the legislative policy underlying it, or in fairness and logic.

### Facts

In November 1985 defendant Bertram Bernard Katz retained the law firm of Trope & Trope to represent him in a marital dissolution proceeding. Their

written agreement provided that "In the event it becomes necessary to file an action to recover the fees and costs set forth in this agreement, the Court may award reasonable attorneys' fees for the recovery of said fees and costs." When Trope & Trope withdrew as counsel in February 1989 it carried an account receivable for services and advances in the amount of some $163,000 that Katz refused to pay. In December 1989 Trope & Trope, representing itself, sued Katz for breach of contract to recover the unpaid fees. Katz answered that the fees were excessive and filed a cross-complaint for damages for legal malpractice. A jury returned a verdict for $163,000 in favor of Trope & Trope on the complaint, but also found in favor of Katz on the cross-complaint and awarded him $118,500 in damages.

Following entry of judgment Trope & Trope moved for an award of attorney fees in the amount of some $223,000 under the attorney fee provision of the contract. Katz opposed the motion on the ground, inter alia, that Trope & Trope could not recover attorney fees because it had represented itself throughout the litigation. The court referred the motion to a referee, who concluded that although Trope & Trope would have been entitled to attorney fees under the 1985 agreement if it had retained an attorney, it was barred from recovering such fees because it had represented itself. The referee also recommended that prejudgment interest be calculated on the basis of the net judgment in Trope & Trope's favor. The trial court adopted the referee's recommendations in their entirety over Trope & Trope's objection.

Trope & Trope contended on appeal that the denial of its motion for attorney fees and the limitation on the award of prejudgment interest were error. The Court of Appeal rejected both contentions and affirmed. Trope & Trope sought review of both issues, but in granting its petition we limited review to whether an attorney who successfully represents himself in litigation may recover attorney fees when such fees are provided for by contract or statute.

## DISCUSSION

California follows what is commonly referred to as the American rule, which provides that each party to a lawsuit must ordinarily pay his own attorney fees. (*Gray* v. *Don Miller & Associates, Inc.* (1984) 35 Cal.3d 498, 504 [198 Cal.Rptr. 551, 674 P.2d 253, 44 A.L.R.4th 763]; *United Services Auto. Assn.* v. *Dalrymple* (1991) 232 Cal.App.3d 182, 187 [283 Cal.Rptr. 330].) The Legislature codified the American rule in 1872 when it enacted Code of Civil Procedure section 1021, which states in pertinent part that "Except as attorney's fees are specifically provided for by statute, the

measure and mode of compensation of attorneys and counselors at law is left to the agreement, express or implied, of the parties. . . ." (See, e.g., *Bruno v. Bell* (1979) 91 Cal.App.3d 776, 781 [154 Cal.Rptr. 435] [American rule codified by Code Civ. Proc., § 1021].) The Legislature has since enacted several statutory exceptions to the American rule, and we have relied on our "inherent equitable authority" to develop three additional exceptions—the common fund, substantial benefit, and private attorney general theories of recovery. (See *Gray* v. *Don Miller & Associates, Inc., supra*, 35 Cal.3d 498, 505; *Consumers Lobby Against Monopolies* v. *Public Utilities Com.* (1979) 25 Cal.3d 891, 906 [160 Cal.Rptr. 124, 603 P.2d 41] (*Consumers Lobby*); *Serrano* v. *Priest* (1977) 20 Cal.3d 25 [141 Cal.Rptr. 315, 569 P.2d 1303]; see generally, Pearl, Cal. Attorney Fee Awards (Cont.Ed.Bar 2d ed. 1994) ch. 7.)

█ Here, however, we are not concerned either with a statutory exception to the American rule or with an equitable theory of recovery. Rather, we address the third scenario in which the American rule does not apply—i.e., when there is an "agreement, express or implied, of the parties" that allocates attorney fees. █ Although Code of Civil Procedure section 1021 gives individuals a rather broad right to "contract out" of the American rule by executing such an agreement, these arrangements are subject to the restrictions and conditions of section 1717 in cases to which that provision applies. (See *Palmer* v. *Shawback* (1993) 17 Cal.App.4th 296, 299-300 [21 Cal.Rptr.2d 575]; *Lerner* v. *Ward* (1993) 13 Cal.App.4th 155, 159-161 [16 Cal.Rptr.2d 486]; *Xuereb* v. *Marcus & Millichap, Inc.* (1992) 3 Cal.App.4th 1338, 1341-1342 [5 Cal.Rptr.2d 154]; see also *Hsu* v. *Abbara* (1995) 9 Cal.4th 863, 868, fn. 3 [38 Cal.Rptr.2d 824, 891 P.2d 804]; see generally, Pearl, Cal. Attorney Fee Awards, *op. cit. supra*, ch. 6.) █ It is undisputed that section 1717 governs the case now before us.

Section 1717, subdivision (a), provides in pertinent part that "In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs." The issue presented by this case is whether an attorney who chooses to represent himself—and therefore does not pay or become liable to pay any sum out of pocket for such representation—can nevertheless recover "reasonable attorney's fees" under section 1717 as compensation for the time and effort expended and the professional business opportunities lost as a result.

Our resolution of this issue turns on how we construe section 1717, and particularly on how we define the words "reasonable attorney's fees" in

subdivision (a) of that statute. ■ We begin as always "with the fundamental premise that the objective of statutory interpretation is to ascertain and effectuate legislative intent." (*Burden* v. *Snowden* (1992) 2 Cal.4th 556, 562 [7 Cal.Rptr.2d 531, 828 P.2d 672].) To discover that intent we first look to the words of the statute, giving them their usual and ordinary meaning. (*Granberry* v. *Islay Investments* (1995) 9 Cal.4th 738, 744 [38 Cal.Rptr.2d 650, 889 P.2d 970]; *DaFonte* v. *Up-Right, Inc.* (1992) 2 Cal.4th 593, 601 [7 Cal.Rptr.2d 238, 828 P.2d 140].) "Where the words of the statute are clear, we may not add to or alter them to accomplish a purpose that does not appear on the face of the statute or from its legislative history." (*Burden* v. *Snowden, supra,* 2 Cal.4th 556, 562.)

■ First, by its terms section 1717 applies only to contracts specifically providing that attorney fees "which are *incurred* to enforce that contract" shall be awarded to one of the parties or to the prevailing party. (Italics added.) To "incur" a fee, of course, is to "become liable" for it (Webster's New Internat. Dict. (3d ed. 1961) p. 1146), i.e., to become obligated to *pay* it. It follows that an attorney litigating in propria persona cannot be said to "incur" compensation for his time and his lost business opportunities.

Second, Black's Law Dictionary defines the word "fee" generally as "A recompense for an official or professional service or a charge or emolument or compensation for a particular act or service. A fixed charge or perquisite charged as recompense for labor; reward, compensation, or wage given to a person for performance of services or something done or to be done." (Black's Law Dict. (6th ed. 1990) p. 614.) It goes on to define the phrase "attorney fees" as a "Charge to client for services performed (*e.g.* hourly fee, flat fee, contingency fee)." (*Ibid.*) Similarly, Webster's defines the word "fee" as "compensation often in the form of a fixed charge for professional service or for special and requested exercise of talent or of skill." (Webster's New Internat. Dict., *supra,* p. 833; see also 5 Oxford English Dict. (2d ed. 1989) p. 797 ["fee" denotes "a payment," such as the "remuneration paid or due to a lawyer, a physician, or (in recent use) any professional man, a director of a public company, etc. for an occasional service"].) Accordingly, the usual and ordinary meaning of the words "attorney's fees," both in legal and in general usage, is the consideration that a litigant actually pays or becomes liable to pay in exchange for legal representation. An attorney litigating in propria persona pays no such compensation.

The case law supports this reading of the words "reasonable attorney's fees" in section 1717. As of 1968, when the Legislature enacted section 1717 (Stats. 1968, ch. 266, § 1, p. 578), all the California courts that had considered the matter had held for many years that an attorney appearing on his

own behalf could not recover attorney fees under either a statutory exception to the American rule or under a contractual attorney fee provision, because in such circumstances the attorney did not pay or become liable to pay consideration in exchange for legal representation.

This court addressed the issue over a century ago in *Patterson v. Donner* (1874) 48 Cal. 369 (*Patterson*). There the trial court awarded the plaintiff "counsel fees" pursuant to an express provision in the mortgage that was the subject of the litigation. This court vacated the award, however, because the plaintiff, an attorney, had represented himself throughout the litigation: the court stated flatly, "We do not think that the stipulation in the mortgage sued on, for counsel fee, can apply where no counsel fee was paid by the plaintiff." (*Id.* at p. 380; accord, *Bank of Woodland v. Treadwell* (1880) 55 Cal. 379, 380 [creditor who did not pay an attorney to represent it in a foreclosure proceeding was not entitled to attorney fees under a provision in a mortgage because "The object of the law allowing counsel fees is . . . to reimburse [the creditor], in a proper amount, for a sum which he pays, or becomes liable to pay, or to relieve him of the burden of paying counsel fees."]; *Carriere v. Minturn* (1855) 5 Cal. 435 ["counsel fees" provision in mortgage was not to be construed as a penalty but as "a provision against an actual expense to be incurred by the creditor on account of the failure of the debtor to fulfil his contract"]; *City Investment Co. v. Pringle* (1920) 49 Cal.App. 353, 356 [193 P. 504] [lessee was not entitled to attorney fees under a lease provision because he did not hire an attorney and "The object of a provision for attorney's fees in a contract is to reimburse a party for sums he pays, or becomes liable to pay, as attorney's fees."].) As early as 1928 one Court of Appeal observed, citing these decisions, that it was "uniformly held that mortgages and other agreements providing for the allowance of attorney fees to a party in litigation arising thereon did not extend to a case where the party has neither paid nor incurred a liability to pay such fees." (*City of Long Beach v. O'Donnell* (1928) 91 Cal.App. 760, 761 [267 P. 585] (*O'Donnell*).)

We extended the reasoning of *Patterson* from the contractual to the statutory context in *City of Long Beach v. Sten* (1929) 206 Cal. 473 [274 P. 968] (*Sten*). There we held that an attorney representing himself in a condemnation proceeding against property he owned could not recover "attorney's fees" under former Code of Civil Procedure section 1255a. In addition to relying on our decision in *Patterson*, we noted that *O'Donnell, supra,* 91 Cal.App. 760, had reached the same conclusion for essentially the same reason, i.e., that such an attorney litigant "could not recover the reasonable value of attorney's services, because he had paid no fee nor incurred any liability to pay one." (206 Cal. at p. 474.) Indeed, the *O'Donnell* court had gone so far as to state that "We have no doubt at all that the

object of [former Code of Civil Procedure section 1255a] as to attorney fees is merely to reimburse a defendant for attorney fees which he has paid, or to indemnify him for such fees for which he has become liable, provided the fees so paid or incurred are reasonable." (91 Cal.App. at p. 761.)

In view of our decision in *Sten*, it was established that in a condemnation proceeding an attorney who represented himself could not recover attorney fees because he had neither paid nor incurred liability to give consideration in exchange for legal representation. (See, e.g., *City of Los Angeles* v. *Hunt* (1935) 8 Cal.App.2d 401, 403-404 [47 P.2d 1075]; *City of Los Angeles* v. *Moyer* (1930) 108 Cal.App. 4, 6 [290 P. 1073].) Contrary to Trope & Trope's contention, however, the rule was not limited to condemnation cases. For example, 10 years before the Legislature enacted section 1717 the Court of Appeal applied the reasoning of *Sten* outside the condemnation context and treated it as a rule of general application. (*O'Connell* v. *Zimmerman* (1958) 157 Cal.App.2d 330, 336-337 [321 P.2d 161].) In that case an attorney representing himself filed an action in interpleader to determine the rights of parties to a contract for the sale of a business, and was awarded attorney fees pursuant to a statute authorizing "a party" in interpleader to pray for "allowance of his costs and reasonable attorney fees *incurred* in such action." (Code Civ. Proc., § 386.6, subd. (a), italics added.) The Court of Appeal set aside the award, reasoning that under the statute, "only such reasonable attorney fees as have been 'incurred' may be requested. Respondent O'Connell did not incur a liability to pay an attorney fee since he represented himself, and the allowance of such was improper. When an attorney represents himself in an action he may not recover the reasonable value of his fee, for he has paid no fee nor has he incurred any liability to pay an attorney fee." (*O'Connell* v. *Zimmerman, supra,* 157 Cal.App.2d 330, 337, citing *Sten* and *Patterson*.)

These pre-1968 cases are significant for two reasons. First, they support our conclusion that the usual and ordinary meaning of the words "reasonable attorney's fees" is the consideration that a litigant pays or becomes liable to pay in exchange for legal representation. Second, they demonstrate that the words "attorney's fees" and "counsel fees," whether used in a contract or in a statute, had an established legal meaning at the time the Legislature enacted section 1717. In the absence of some indication either on the face of that statute or in its legislative history that the Legislature intended its words to convey something other than their established legal definition, the presumption is almost irresistible that the Legislature intended them to have that meaning. (*Western States Petroleum Assn.* v. *Superior Court* (1995) 9 Cal.4th 559, 570 [38 Cal.Rptr.2d 139, 888 P.2d 1268]; *People* v. *Weidert* (1985) 39 Cal.3d 836, 845-846 [218 Cal.Rptr. 57, 705 P.2d 380].)

Trope & Trope does not contend that the words "reasonable attorney's fees" are ambiguous or susceptible of more than one reasonable interpretation, nor does it draw our attention to any portion of the legislative history of section 1717 that would support the reading it suggests. Rather, Trope & Trope devotes virtually all its briefing to the contention that our prior decisions in *Patterson* and *Sten* have been somehow "repudiated" or "abrogated" and therefore no longer carry any precedential weight, or, in the alternative, that even if *Patterson* and *Sten* are still viable precedents, we should overrule them or restrict them to their facts because they are "not supported by logic or policy."

The issue, however, is not whether *Patterson* and *Sten* were correctly decided or are still viable, nor whether we would reach a different conclusion if those cases were before us today. Rather, the Legislature has now spoken on the subject, and the issue is whether *in enacting section 1717 the Legislature intended* to allow attorneys who represent themselves to recover "reasonable attorney's fees" for the time and effort they have expended and the professional opportunities they have lost as a result of their decision to litigate a contract dispute in propria persona, even though they have not actually paid or become liable to pay any consideration in exchange for legal representation. As explained above, we believe the Legislature did not so intend.

Even if we restate Trope & Trope's first contention to urge that we should not construe the words "reasonable attorney's fees" in section 1717 in the same way as we construed essentially the same language in *Patterson* and *Sten* because those decisions are no longer good law in this state, it nevertheless remains unpersuasive. In support of this contention, Trope & Trope relies heavily on footnote 13 of the opinion in *Consumers Lobby, supra,* 25 Cal.3d 891, 915—a case decided some 11 years *after* the Legislature enacted section 1717—which remarks that "the logic of past decisions that do not allow an attorney to recover fees when he appears on his own behalf is unclear. Although such an attorney does not pay a fee or incur any *financial* liability therefor to another, his *time spent* in preparing and presenting his case is not somehow rendered less valuable because he is representing himself rather than a third party. Accordingly, it would appear he should be compensated when he represents himself if he would otherwise be entitled to such compensation, absent a showing in a particular case that such an award would place his interests in conflict with those whom he represents." (Italics in original.)

Trope & Trope's reliance on footnote 13 of *Consumers Lobby* is misplaced for several reasons. First, *Consumers Lobby* itself is patently distinguishable

from *Patterson, Sten,* and the case at bar in that the primary issue in *Consumers Lobby* was whether the Public Utilities Commission has discretion under Public Utilities Code section 701 to award attorney fees to a pro se litigant in an administrative proceeding under any of the traditional *equitable* exceptions to the American rule, such as the private attorney general, substantial benefit, and common fund theories; neither *Patterson, Sten,* nor this case involves any such equitable exception. This distinction is even more critical than may appear at first glance. Because *Consumers Lobby* involved an equitable exception to the American rule, our authority to shape the various theories of recovery discussed therein derived from our traditionally broader and more flexible "inherent equitable powers." (*Gray* v. *Don Miller & Associates, Inc., supra,* 35 Cal.3d 498, 505; see *Consumers Lobby, supra,* 25 Cal.3d 891, 906; *Serrano* v. *Priest, supra,* 20 Cal.3d 25.) As such, we had far greater liberty to identify and weigh in the first instance the various public policy considerations relevant to our analysis. However, both our task and the source of our authority were different in *Sten* and are different in this case. The issue here, as in *Sten,* is not whether as matter of public policy an attorney who chooses to litigate in propria persona should be allowed to recover attorney fees, but whether the Legislature so intended when it enacted the statute governing the particular claim at issue, in this case section 1717. Whatever latitude we may have had in *Consumers Lobby* to resolve such public policy issues under our inherent equitable powers is absent here.

Trope & Trope's reliance on footnote 13 of *Consumers Lobby* is further undermined by the fact that it is pure dictum. As we have said many times, " ' "the language of an opinion must be construed with reference to the facts presented by the case, and the positive authority of a decision is coextensive only with such facts." ' " (*Adoption of Kelsey S.* (1992) 1 Cal.4th 816, 828 [4 Cal.Rptr.2d 615, 823 P.2d 1216]; accord, *Security Pacific National Bank* v. *Wozab* (1990) 51 Cal.3d 991, 1003-1004 [275 Cal.Rptr. 201, 800 P.2d 557]; *Childers* v. *Childers* (1946) 74 Cal.App.2d 56, 61 [168 P.2d 218] ["a decision is not authority for what is *said* in the opinion but only for the points *actually involved* and actually decided" (italics in original)].)

 Finally, even if footnote 13 of *Consumers Lobby* were not dictum, it would not support Trope & Trope's broad construction of the words "reasonable attorney's fees" in section 1717. Let us assume for the sake of discussion that the footnote's premise was correct and that an attorney litigant devotes as much time and effort to litigating a matter on his own behalf as he does to litigating a case on behalf of a client, and that his time is equally valuable whether he is acting on behalf of himself or of a client. It

does not necessarily follow from this premise, however, that he is entitled to receive compensation from his opponent simply because the time he devotes to litigating a matter on his own behalf has value. The time that a doctor, for example, spends litigating a case on his own behalf also has value, both to the doctor himself and to society generally, for that time could otherwise be spent treating the sick or pursuing medical research for the benefit of all; an architect's time could otherwise be spent designing or building houses; a painter's time could be spent creating works of art for future generations to enjoy. However, it is clear that when it enacted section 1717 the Legislature did not intend to allow doctors, architects, painters, or any other nonattorneys to receive compensation for the valuable time *they* spend litigating a contract matter on their own behalf. (See *Jacobson* v. *Simmons Real Estate* (1994) 23 Cal.App.4th 1285, 1290-1294 [28 Cal.Rptr.2d 699]; accord, *Kay* v. *Ehrler* (1991) 499 U.S. 432, 435 & fn. 5 [113 L.Ed.2d 486, 491, 111 S.Ct. 1435] [federal circuit courts have unanimously and correctly held that nonattorney pro se litigants cannot recover a "reasonable attorney's fee" under the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988]; *Manos* v. *U.S. Dept. of Air Force* (N.D.Cal. 1993) 829 F. Supp. 1191, 1192-1193 [federal circuit courts have unanimously held that nonattorney pro se litigants cannot recover attorney fees under the Freedom of Information Act, 5 U.S.C. § 552(a)(4)(B) et seq.]; *Swanson & Setzke, Chtd.* v. *Henning* (1989) 116 Idaho 199 [774 P.2d 909, 910] ["a clear majority of courts hold that if a nonlawyer undertakes to represent himself in litigation, he is not entitled to an award of attorney fees"].) Therefore, to apply the reasoning of footnote 13 of *Consumers Lobby* in this context would be to hold that the time and opportunity that an attorney gives up when he chooses to litigate a case in propria persona are somehow qualitatively more important and worthy of compensation than those of other pro se litigants. There is no support in either the language or legislative history of section 1717 for such disparate treatment of pro se litigants on the basis of their occupations.

In fact, such disparate treatment would conflict with the legislative purpose of section 1717. ■ The statute was designed to establish mutuality of remedy when a contractual provision makes recovery of attorney fees available to only one party, and to prevent the oppressive use of one-sided attorney fee provisions. (*Hsu* v. *Abbara, supra,* 9 Cal.4th 863, 870-871; *Reynolds Metals Co.* v. *Alperson* (1979) 25 Cal.3d 124, 128 [158 Cal.Rptr. 1, 599 P.2d 83]; see generally, Acoba, *Recovery of Attorney's Fees in Actions to Enforce Contracts: California Civil Code Section 1717* (1985) 12 Western St. U. L.Rev. 751.) ■ If an attorney who is the prevailing party in an action to enforce a contract with an attorney fee provision can recover compensation for the time he expends litigating his case in propria persona, but a nonattorney pro se litigant cannot do so regardless of the personal and

economic value of such time simply because he has chosen to pursue a different occupation, *every* such contract would be oppressive and one-sided.

Our Legislature is not alone in its recognition of the impropriety of such disparate treatment; courts of our sister states have also recognized the unfairness of such discrimination. For example, in *Swanson & Setzke, Chtd.* v. *Henning, supra,* 774 P.2d 909, 913, the court declined to award attorney fees to an attorney litigant primarily because "The system would be one-sided, and would be viewed by the public as unfair, if one party (a lawyer litigant) could qualify for a fee award without incurring the potential out-of-pocket obligation that the opposing party (a nonlawyer) ordinarily must bear in order to qualify for a similar award [i.e., without paying or becoming liable to pay consideration in exchange for legal representation]. Moreover, if both parties opt to litigate *pro se,* it would be palpably unjust for one of them (the lawyer litigant) to remain eligible for an attorney fee award, while the other becomes ineligible. . . . [¶] . . . [¶] In our view, the public perception of fairness in the legal system is of greater moment than a lawyer litigant's claim to an attorney fee award if he elects to represent himself." (See also *Connor* v. *Cal-Az Properties, Inc.* (1983) 137 Ariz. 53 [668 P.2d 896, 899] ["the leverage which would be granted to attorneys appearing on their own behalf could easily become oppressive where the opposition is forced to incur legal expenses"]; *Smith* v. *Batchelor* (Utah 1992) 832 P.2d 467, 474 [to allow attorney litigants to recover fees while lay pro se litigants go uncompensated "discriminates between lay and attorney litigants. It is a sufficient advantage to a lawyer-litigant that he or she is capable of competently presenting his or her claim without the need of retained counsel. Because we are loath to enhance that advantage by giving the lawyer-litigant recovery not only as a successful party, but also as that party's attorney, we hold that pro se litigants should not recover fees, regardless of their professional status."].)

Trope & Trope relies on two Court of Appeal decisions (*Dameshghi* v. *Texaco Refining & Marketing, Inc.* (1992) 3 Cal.App.4th 1262, 1290-1291 [6 Cal.Rptr.2d 515] (*Dameshghi*); *Renfrew* v. *Loysen* (1985) 175 Cal.App.3d 1105, 1107-1110 [222 Cal.Rptr. 413] (*Renfrew*)) that expressed the view that our holdings in *Patterson* and *Sten* are no longer viable in light of the dictum in *Consumers Lobby, supra,* 25 Cal.3d 891, 915, footnote 13, and held that an attorney litigant can recover attorney fees under section 1717 as compensation for the time and effort spent litigating a case on his own behalf. According to Trope & Trope, these two Court of Appeal decisions support the proposition that *Patterson* and *Sten* have been "repudiated."

It is true that the dictum in *Consumers Lobby* asserted that the logic of our decisions in *Patterson* and *Sten* was "unclear," at least as it related to the

equitable issues then before us. However, we did not overrule *Sten*, *Patterson*, or any of the other similar cases discussed above. ■ A precedent cannot be overruled in dictum, of course, because only the ratio decidendi of an appellate opinion has precedential effect (see generally, 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 783, p. 753); to hold otherwise, as the *Renfrew* and *Dameshghi* courts apparently did, would be to conclude that a statement by this court that *is not* a precedent can somehow abrogate an earlier statement by this court that *is* a precedent. This is not the law. ■ It follows that *Patterson* and *Sten* carried the same precedential weight after *Consumers Lobby* as they carried before, and the lower courts remained obliged to follow them unless they could be fairly distinguished. (*Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937]; see, e.g., *Crowley* v. *Katleman* (1994) 8 Cal.4th 666, 679 [34 Cal.Rptr.2d 386, 881 P.2d 1083].)[1]

Trope & Trope also cites four other Court of Appeal decisions for the proposition that *Patterson* and *Sten* are no longer viable. (*Garfield Bank* v. *Folb* (1994) 25 Cal.App.4th 1804 [31 Cal.Rptr.2d 239] (*Garfield Bank*); *Jacobson* v. *Simmons Real Estate*, *supra*, 23 Cal.App.4th 1285 (*Jacobson*); *Hambrose Reserve, Ltd.* v. *Faitz* (1992) 9 Cal.App.4th 129 [11 Cal.Rptr.2d 638] (*Hambrose Reserve*); *Leaf* v. *City of San Mateo* (1984) 150 Cal.App.3d 1184 [198 Cal.Rptr. 447] (*Leaf*).) Not only does the foregoing discussion apply to each of these cases, but each is distinguishable on its facts. Although each suggested that *Patterson* and *Sten* were no longer viable in light of our dictum in *Consumers Lobby*, none actually addressed or decided the narrow issue now before us, i.e., whether the Legislature intended to allow attorney litigants to recover "attorney's fees" under section 1717 as

---

[1]Nor is it significant that we denied review in *Dameshghi* and *Renfrew*. It is well established that "our refusal to grant a hearing in a particular case is to be given *no* weight insofar as it might be deemed that we have acquiesced in the law as enunciated in a published opinion of a Court of Appeal when such opinion is in conflict with the law as stated by this court. Our statements of law remain binding on the trial and appellate courts of this state [citations] and must be applied wherever the facts of a case are not fairly distinguishable from the facts of the case in which we have declared the applicable principle of law. Our refusal to grant a hearing in any given case must not be deemed a sub silentio overruling of our prior decisions." (*People* v. *Triggs* (1973) 8 Cal.3d 884, 890-891 [106 Cal.Rptr. 408, 506 P.2d 232], disapproved on another point in *People* v. *Lilienthal* (1978) 22 Cal.3d 891, 896, fn. 4 [150 Cal.Rptr. 910, 587 P.2d 706]; see also *Camper* v. *Workers' Comp. Appeals Bd.* (1992) 3 Cal.4th 679, 689, fn. 8 [12 Cal.Rptr.2d 101, 836 P.2d 888]; Advisory Com. com. to Cal. Rules of Court, rule 28 ["It has long been established in California law that a denial of hearing is not an expression of the Supreme Court on the merits of the cause. [Citations.] Adoption of the new 'review' procedure does not affect this legal doctrine, and denial of review will not be an expression of the opinion of the Supreme Court on the correctness of the judgment of the Court of Appeal or on the correctness of any discussion in the Court of Appeal opinion."].)

compensation for the time and effort they spend litigating matters on their own behalf.[2]

For all these reasons Trope & Trope's contention that *Patterson* and *Sten* have been "repudiated" or "abrogated" is without merit. We therefore turn to its second contention, i.e., that our decisions in *Patterson* and *Sten* were "not supported by logic or policy" and should now be overruled. ■ Before addressing the merits of this contention, however, we stress that although the doctrine of stare decisis does not prevent us from reexamining and, if need be, overruling our prior decisions, "It is . . . a fundamental jurisprudential policy that prior applicable precedent usually must be followed even though the case, if considered anew, might be decided differently by the current justices. This policy . . .' is based on the assumption that certainty, predictability and stability in the law are the major objectives of the legal system; i.e., that parties should be able to regulate their conduct and enter into relationships with reasonable assurance of the governing rules of law.'" (*Moradi-Shalal* v. *Fireman's Fund Ins. Companies* (1988) 46 Cal.3d 287, 296 [250 Cal.Rptr. 116, 758 P.2d 58].) Accordingly, a party urging us to overrule a precedent faces a rightly onerous task, the difficulty of which is roughly proportional to a number of factors, including the age of the precedent, the nature and extent of public and private reliance on it, and its consistency or inconsistency with other related rules of law.

■ Moreover, Trope & Trope has again framed its contention as if its claim for attorney fees were governed by common law and not by statute. It is largely irrelevant whether *Patterson* and *Sten* should be overruled, for those cases do not directly respond to the question before us. Rather, by Trope & Trope's own admission section 1717 governs its claim for attorney fees. Thus the issue is not whether, when considered in a vacuum, *Patterson* and *Sten* were "not supported by logic or policy," but whether to construe the words "reasonable attorney's fees" in section 1717 as we construed essentially the same words in *Patterson* and *Sten*—which interpretation would also be consistent with the words' usual and ordinary meaning —would conflict with the legislative purpose of the statute, or would lead to absurd results that the Legislature could not have intended, or would be improper for some other compelling reason. (*People* v. *Broussard* (1993) 5 Cal.4th 1067, 1071 [22 Cal.Rptr. 278, 856 P.2d 1134]; *DaFonte* v. *UpRight, Inc., supra,* 2 Cal.4th 593, 601.)

---

[2]In *Garfield Bank* the court held that the prevailing party could recover attorney fees under section 1717 even though he was represented by in-house counsel. In *Jacobson* the court held that the pro se litigant could not recover attorney fees under section 1717 because he was not an attorney. In *Hambrose Reserve* the court held that the attorney litigant could not recover attorney fees under section 1717 because he was not a party prevailing on a contract. Finally, in *Leaf* the court held that an attorney litigant could recover attorney fees not under section 1717, but under a different statute.

Having thus refocussed the issue, we turn to the merits of Trope & Trope's public policy contentions. In essence, Trope & Trope adopts and reiterates the policy rationales of the six Court of Appeal decisions cited above (*Garfield Bank*, *supra*, 25 Cal.App.4th 1804; *Jacobson*, *supra*, 23 Cal.App.4th 1285; *Hambrose Reserve*, *supra*, 9 Cal.App.4th 129; *Dameshghi*, *supra*, 3 Cal.App.4th 1262; *Renfrew*, *supra*, 175 Cal.App.3d 1105; *Leaf*, *supra*, 150 Cal.App.3d 1184), of the concurring opinion filed in the Court of Appeal in this case, and of certain federal and sister-state opinions, together with some policy justifications of its own. These various contentions can be distilled into the following.

First, Trope & Trope asserts that if an attorney litigant prevails in an action to enforce a contract but is not allowed to recover attorney fees because he represents himself, his opponent receives a windfall. It does not follow, however, that we should construe section 1717 to allow a pro se attorney to recover compensation for the time and effort spent litigating his own case even though a nonattorney pro se litigant cannot recover such compensation. *Any* litigant who chooses to represent himself in an action to which section 1717 applies necessarily assumes the risk that he may be required to pay his opponent's attorney fees if he does not prevail, even though he will not be compensated for his own time and effort regardless of the result. To accept Trope & Trope's contention would be to conclude that an attorney litigant should not be compelled to assume this risk because he happens to be an attorney, even though nonattorney pro se litigants necessarily must assume it. Not only would such a conclusion defy logic, it would also conflict with the legislative purpose underlying section 1717, which, as discussed more fully above, is to ensure that contractual attorney fee provisions are enforced evenhandedly.

Second, Trope & Trope contends it is appropriate to allow attorney litigants to recover attorney fees under section 1717 but to deny such recovery to nonattorney litigants because the latter do not have the same skills as attorneys, have no established billing rates, and are not bound by the same ethical rules as attorneys. We see no reason to conclude, however, that attorney litigants should receive compensation for their time and effort in this context merely because they are more skilled than nonattorneys; indeed, one could quite logically maintain the opposite, because a nonattorney litigant may often have to spend *more* time and exert *more* effort learning the law and procedure relevant to his case, and may be forced to divert even *more* time from his own pursuits, whatever they may be. Nor is it relevant that an attorney must comply with certain ethical rules that do not bind nonattorneys. And the mere fact that attorneys have established billing rates so that the value of their time can be quantified is of little or no significance:

were we to conclude that an attorney litigant can recover attorney fees because the value of his time can be calculated on the basis of a fixed hourly rate, it would be irrational not to conclude that all pro se litigants whose time can likewise be valued on such a basis—such as the doctor and architect hypothesized above—should also receive "reasonable attorney's fees."

Third, Trope & Trope argues that an attorney litigant may be able to represent himself more efficiently and inexpensively because he is familiar with his own case, whereas a retained attorney would have to educate himself about the underlying facts and history of the dispute. An attorney litigant can take this factor into account in a given case, however, by weighing the cost of the additional time that a retained attorney would have to spend educating himself about the case against the effect that self-representation would have on his own interests, including the risk that his time would go uncompensated if he proceeds in propria persona and that his settlement position would be affected because his opponent would not have to pay attorney fees under section 1717 even if he does not prevail. We see no compelling reason to construe the language of section 1717 in a way that conflicts with its plain meaning merely to relieve attorney litigants of the need to weigh these options.

Fourth, Trope & Trope contends that unless we construe section 1717 as it proposes, many attorneys will "assign" their claims to a third party with the understanding that the third party will then "hire" them to litigate the case. But we have no reason to believe that in the 66 years since *Sten* was decided attorneys have attempted to avoid the rule of that decision by taking the ethically questionable step of hiring a straw man to stand in for them as a party to a contract action to which section 1717 applies. And the theoretical possibility that *some* attorneys could do so in the future does not justify a rule that would allow *all* attorney litigants to recover attorney fees when they appear in propria persona. To embrace such reasoning would in effect be to conclude that any rule that some individuals may attempt to circumvent or violate should be abandoned so as not to encourage such conduct. The absurdity of such a conclusion is obvious. It would follow, for example, that there should be no contracts because people may break them, no tax laws because people may avoid them.

Fifth, Trope & Trope asserts that in many cases in which an attorney sues a former client over a fee dispute, the former client cross-claims for malpractice. Indeed, this very case serves as an illustration, for Katz filed such a cross-claim. Trope & Trope reasons that in this event the attorney must decide whether to tender the defense to his malpractice insurance carrier or continue to litigate the matter in propria persona, by weighing such factors

as the merit of the former client's claim, the size of the maximum possible recovery, and the difficulty and expense of defending against it. According to Trope & Trope, if we were to hold that in such circumstances attorney litigants cannot recover "reasonable attorney's fees" under section 1717, the attorneys would be more likely to tender the defense to their insurance carriers and this tendency might result in higher malpractice insurance premiums.

While the predicted consequence is theoretically possible, Trope & Trope greatly overstates the matter. It is difficult to believe that an attorney facing a potentially meritorious malpractice claim seeking substantial damages would decline to tender the defense to his insurance carrier and instead choose to assume the risk of a substantial adverse judgment solely or even primarily because he cannot recover attorney fees if he represents himself. On the other hand, it is also unlikely that an attorney facing an evidently meritless or insignificant claim would tender the defense in order to recover attorney fees; indeed, it is probable that such a matter would be quickly resolved in propria persona or even settled without much effort. An attorney may also tender the defense in contentious or complex malpractice cases to avoid the risk of neglecting his other clients' interests and his overall practice, regardless of whether he could recover attorney fees. In short, although the availability of attorney fees may in theory be relevant to the decision whether to tender the defense of a cross-claim for malpractice in some cases, it is only one of many factors that an attorney must weigh in making this choice, and it is not so vital a factor in so many cases that we are compelled to conclude the Legislature must have intended to allow attorneys to recover attorney fees when appearing in propria persona.

Finally, Trope & Trope contends that the application of *Patterson* and *Sten* in this context would conflict with the "developing body of law" on the question whether a litigant can recover attorney fees if he was represented by in-house counsel. (See *Garfield Bank, supra,* 25 Cal.App.4th 1804.) It reasons that if we hold that a litigant cannot recover attorney fees unless he actually paid or became liable to pay consideration in exchange for legal representation, it would mean that a litigant represented by in-house counsel could not recover such fees because it paid its attorney a salary rather than a fee. The conclusion does not necessarily follow, because an argument can be made that in such circumstances the salary is the functional equivalent of the fee. Resolution of that question, however, must await another day: we have no occasion in this case to decide whether a litigant represented by in-house counsel can or cannot recover "reasonable attorney's fees" under section 1717, and nothing in our opinion should be read as endorsing or precluding such an award.

In light of the foregoing, we do not find Trope & Trope's public policy arguments sufficiently compelling to support a conclusion that the Legislature must have intended the words "reasonable attorney's fees" in section 1717 to carry some special significance other than their usual and ordinary meaning or their established legal definition because it wished to facilitate or encourage self-representation by attorney litigants. In fact, the United States Supreme Court recently observed in its unanimous decision in *Kay* v. *Ehrler, supra,* 499 U.S. 432, that a lawmaking body may instead prefer to discourage attorneys from electing to appear in propria persona because such self-representation may often conflict with the general public and legislative policy favoring the effective and successful prosecution of meritorious claims. The high court observed that "Even a skilled lawyer who represents himself is at a disadvantage in contested litigation. Ethical considerations may make it inappropriate for him to appear as a witness. He is deprived of the judgment of an independent third party in framing the theory of the case, evaluating alternative methods of presenting the evidence, cross-examining hostile witnesses, formulating legal arguments, and in making sure that reason, rather than emotion, dictates the proper tactical response to unforeseen developments in the courtroom. The adage that 'a lawyer who represents himself has a fool for a client' is the product of years of experience by seasoned litigators." (*Id.* at pp. 437-438 [113 L.Ed.2d at pp. 492-493], fn. omitted.) The high court was not only persuaded by this rationale, but concluded almost entirely on the basis of it alone that Congress could not have intended to allow attorney litigants to recover a "reasonable attorney's fee" under the Civil Rights Attorney's Fees Awards Act of 1976, 42 United States Code section 1988.

For the reasons stated, we hold that an attorney who chooses to litigate in propria persona and therefore does not pay or become liable to pay consideration in exchange for legal representation cannot recover "reasonable attorney's fees" under section 1717 as compensation for the time and effort he expends on his own behalf or for the professional business opportunities he forgoes as a result of his decision. To the extent they conflict with this holding, we disapprove *Dameshghi, supra,* 3 Cal.App.4th 1262, and *Renfrew, supra,* 175 Cal.App.3d 1105. To the extent they state or imply that our prior decisions in *Patterson, supra,* 48 Cal. 369, and *Sten, supra,* 206 Cal. 473, are no longer precedents, we also disapprove *Garfield Bank, supra,* 25 Cal.App.4th 1804, *Jacobson, supra,* 23 Cal.App.4th 1285, *Hambrose Reserve, supra,* 9 Cal.App.4th 129, and *Leaf, supra,* 150 Cal.App.3d 1184. We emphasize, however, that we express no opinion regarding any other aspect of the reasoning or the holdings of the latter four Court of Appeal decisions and that we express no opinion regarding the applicability of our reasoning in *Patterson* and *Sten* in the context of the equitable exceptions to the American rule.

The judgment of the Court of Appeal is affirmed.

Lucas, C. J., Kennard, J., Arabian, J., Baxter, J., George, J., and Werdegar, J., concurred.