FARMERS INSURANCE EXCHANGE, an Inter–Insurance Exchange, Plaintiff,

v.

LAW OFFICES OF CONRADO JOE SAYAS, JR., Esq.; Quisenberry & Kabateck, LLP, Defendants–Appellees,

Narendra Desai, an individual; Bela Desai, an individual, Defendants–Cross–Defendants–Appellants,

and

Taylor Miller & Ames; United States Small Business Administration; City of Santa Monica; Does, I–X, inclusive, Defendants.

No. 99–56844.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 5, 2001

Filed May 7, 2001

Jon R. Mower and John R. Armstrong, Mower, Koeller, Nebeker, Carlson & Haluck, LLP, Irvine, California, for the defendants-cross-defendants-appellants.

John N. Quisenberry, Brian S. Kabateck, and Heather M. Mason, Quisenberry & Kabateck LLP, and Conrado Joe Sayas, Law Offices of Conrado Joe Sayas, Jr., Los Angeles, California, for the defendants/appellees.

Before: HUG, DUHÉ,* and TALLMAN, Circuit Judges.

Opinion by Judge TALLMAN; Dissent by Judge HUG.

---

* Honorable John M. Duhé, Jr., Senior United States Circuit Judge for the Fifth Circuit, sitting by designation.

TALLMAN, Circuit Judge:

Narendra and Bela Desai appeal the district court's decision to award attorneys' fees to their former attorneys, The Law Offices of Conrado Joe Sayas, Jr. ("Sayas") and Quisenberry & Barbanel, LLP ("Q & B").[1] Sayas and Q & B jointly represented the Desais in an insurance bad faith action. The Desais were unhappy with the outcome and discharged the two law firms. The firms then hired each other to litigate against the Desais in order to recover the contingent fee due under the initial client retainer agreement. The district court awarded each firm attorneys' fees to cover the costs of litigating the underlying fee dispute against the Desais. We have jurisdiction pursuant to 28 U.S.C. § 1291 and we affirm.

## I. FACTS AND PRIOR PROCEEDINGS.

Narendra and Bela Desai owned rental property in Santa Monica, California, that was partially insured by Farmers Insurance Exchange. The property was damaged by fire during the Northridge Earthquake of 1994. The Desais received disaster loans from the United States Small Business Administration ("SBA") and the City of Santa Monica. They also filed a claim with Farmers for the insured portions of the property.

While the claim with Farmers was pending, a dispute arose regarding the scope of insurance benefits due under the contract. The Desais hired Sayas to represent them in an insurance bad faith action against Farmers. Sayas, in turn, hired Q & B as co-counsel in the action. The client retainer agreement signed by the parties provided that Sayas and Q & B would receive

---

1. Q & B recently changed its name to Quisenberry & Kabateck LLP.

40% of the net settlement after deducting costs plus $30,000 for the Desais. The retainer agreement also contained the following clause: "In any dispute between Lawyers and Client, the prevailing party will be entitled to reasonable attorney fees."

With the assistance of Sayas and Q & B, the Desais eventually settled the case with Farmers. After the settlement, however, the Desais became dissatisfied with the quality of representation they had received from Sayas and Q & B. They believed that Sayas and Q & B improperly failed to advise them that the SBA and the City would be entitled to immediate repayment of the disaster loans, which would drastically reduce the settlement payment that the Desais would ultimately receive. Because they believed they had received bad legal advice in settling, the Desais hired new counsel and moved in California superior court to vacate the dismissal of their bad faith claim against Farmers so that they could rescind the settlement agreement. While the motion to vacate was pending, Sayas and Q & B filed an ex parte application against the Desais to recover the fees and costs due to them under the retainer agreement. The motion to vacate was ultimately denied, but the fee dispute between the Desais and Sayas and Q & B remained.

As a result of the dispute over the distribution of the insurance proceeds, Farmers brought an interpleader action in California superior court, naming as defendants the Desais, Sayas, Q & B, the SBA, and the City. The SBA removed the interpleader action to federal district court. After the Desais settled with the SBA and the City, Sayas and Q & B moved for, and were granted, summary judgment on the underlying fee dispute. The district court

found that Sayas and Q & B were entitled to a total of $333,266.94 in attorneys' fees and costs under the retainer agreement for representing the Desais in the bad faith action and settlement.

Sayas and Q & B then moved for attorneys' fees under California Civil Code § 1717 to cover the fees they incurred in prosecuting the underlying fee dispute. The district court granted their motions for attorneys' fees, awarding Q & B $45,652.80 in fees for its representation of Sayas, and Sayas $16,990.80 in fees for its representation of Q & B.[2] The Desais appeal.

## II.  DISCUSSION.

### A.  Standard of Review.

■  Because this case is based on diversity jurisdiction, we are obligated to apply California state law regarding attorneys' fees. *See Kabatoff v. Safeco Ins. Co. of America,* 627 F.2d 207, 210 (9th Cir.1980). "The task of a federal court in a diversity action is to approximate state law as closely as possible in order to make sure that the vindication of the state right is without discrimination because of the federal forum." *Gee v. Tenneco, Inc.,* 615 F.2d 857, 861 (9th Cir.1980).

■  The district court's construction of the law of the state in which it sits is entitled to substantial deference. *Kabatoff,* 627 F.2d at 209. Our review of the district court's decision is therefore restricted. We will not reverse the district court on issues of the construction of state law unless the construction is clearly wrong. *Id.; Gee,* 615 F.2d at 861.

**2.** The district court denied Sayas and Q & B's motion to recover costs and prejudgment interest, reasoning that section 1717 only applies to attorneys' fees. That portion of the district court's decision was not appealed.

## B. Attorneys' Fees.

California law ordinarily does not allow for recovery of attorneys' fees. *Trope v. Katz*, 11 Cal.4th 274, 45 Cal. Rptr.2d 241, 244, 902 P.2d 259 (1995). One exception is where the parties contractually obligate themselves to pay attorneys' fees. *Id.* at 245, 902 P.2d 259. These contractual provisions are governed by California Civil Code § 1717, which provides:

> In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs.

Section 1717 was enacted to provide for a mutuality of remedy when a contract makes recovery of attorneys' fees available only to one party. *See Trope,* 45 Cal. Rptr.2d at 249, 902 P.2d 259.

The Desais admit that, had Sayas or Q & B hired other counsel to litigate the underlying fee dispute, they would be obligated under the contract and section 1717 to pay the attorneys' fees. They contend that pursuant to the California Supreme Court's decision in *Trope v. Katz,* Sayas and Q & B are not entitled to attorneys' fees because they represented themselves in the fee dispute. Sayas and Q & B argue that *Trope* does not apply because they each hired the other to represent themselves in the fee dispute.

In *Trope,* the court held that an attorney representing himself, in propria persona, is not entitled under section 1717 to recover attorneys' fees for costs incurred in litigation. *Id.* at 254, 902 P.2d 259. That case, like the instant case, involved a fee dispute between a law firm and its former client, in which the retainer agreement provided for attorneys' fees to the prevailing party. *Id.* at 277–78, 45 Cal.Rptr.2d 241, 902 P.2d 259. The court based its decision solely on the statutory interpretation of section 1717, and specifically on what it means to "incur" attorneys' fees. *Id.* at 280, 45 Cal.Rptr.2d 241, 902 P.2d 259. In ultimately concluding that an attorney who represents himself, in propria persona, is not entitled to attorneys' fees under section 1717, the court reasoned that such an attorney does not become liable to pay fees to another, and therefore does not "incur" fees within the meaning of section 1717. *Id.* Rather, an in propria persona attorney incurs only "opportunity costs"; that is, the costs of the time spent preparing his case that could have been spent representing other clients. *Id.* at 283, 45 Cal. Rptr.2d 241, 902 P.2d 259.

The court concluded that the purpose of section 1717, to provide a mutuality of remedy, would be thwarted by allowing an in propria persona attorney to recover attorneys' fees when a non-attorney pro se litigant would not be allowed to recover attorneys' fees, even with a contractual attorneys' fees provision. *Id.* at 285, 45 Cal.Rptr.2d 241, 902 P.2d 259. To hold that an in propria persona attorney is entitled to attorneys' fees "would be to hold that the time and opportunity that an attorney gives up when he chooses to litigate a case in propria persona are somehow qualitatively more important and worthy of compensation than those of other pro se litigants." *Id.* Thus, the key to the analysis of section 1717 under *Trope* is the *incurring* of fees.

In this case, the district court rejected the Desais' argument that the *Trope* rule should be applied, reasoning that: (1) *Trope*'s overriding concern about the disparate treatment of non-attorney pro se litigants was not present in this case; (2)

to hold that *Trope* applied would be to deny a party the benefit of retaining an attorney who is already familiar with the case; and (3) in Arizona, which has a rule nearly identical to the *Trope* rule, a court nonetheless held that an attorney, who was a general partner in a partnership where the other general partner was a trust for which he was the trustee (and from which he could distribute the corpus to himself upon the death of the beneficiaries), could recover fees for his representation of the partnership. *See Hunt Investment Co. v. Eliot,* 154 Ariz. 357, 742 P.2d 858 (App. 1987). We conclude that the district court was not clearly wrong in interpreting California law to allow for recovery of attorneys' fees in this case.

California courts have indicated that the rule in *Trope* restricting in propria persona attorneys from recovering fees under section 1717 is narrow. Since *Trope,* the California Supreme Court has allowed a corporation that was represented by in-house counsel in a non-fee-related dispute to recover attorneys' fees. *See PLCM Group, Inc. v. Drexler,* 22 Cal.4th 1084, 95 Cal.Rptr.2d 198, 205, 997 P.2d 511 (2000). Moreover, a California appellate court has allowed an attorney who was represented by other members of his law firm to recover attorneys' fees under section 1717. *See Gilbert v. Master Washer & Stamping Co., Inc.,* 87 Cal.App.4th 212, 104 Cal.Rptr.2d 461, 467–69 (2001).

In both of these cases, the courts focused solely on whether the fees were "incurred" within the meaning of section 1717. *PLCM Group,* 95 Cal.Rptr.2d at 205, 997 P.2d 511; *Gilbert,* 104 Cal.Rptr.2d at 467. Both courts concluded that, because the parties claiming fees had become liable to other parties for some amount of money as a result of the litigation (in both cases this liability was in the form of employees' salaries), those fees were "incurred." *PLCM Group,* 95 Cal.Rptr.2d at 205, 997 P.2d 511; *Gilbert,* 104 Cal.Rptr.2d at 467. In addition, because the fees were incurred, the concern about disparate treatment between in propria persona attorneys and pro se non-attorney litigants was not present. *PLCM Group,* 95 Cal. Rptr.2d at 204, 997 P.2d 511; *Gilbert,* 104 Cal.Rptr.2d at 469. Finally, in both of these cases there was an attorney-client relationship between an attorney with separate interests from, and a fiduciary duty to, the client. *PLCM Group,* 95 Cal. Rptr.2d at 204, 997 P.2d 511; *Gilbert,* 104 Cal.Rptr.2d at 468.

California courts have also indicated that the meaning of the term "incur" is fairly broad. For example, in *PLCM Group,* the court allowed the corporation to recover fees based on an hourly market rate for attorneys, rather than the actual costs to the corporation in paying the in-house counsel's salary. *See PLCM Group,* 95 Cal.Rptr.2d at 207, 997 P.2d 511. *See also Rosenaur v. Scherer,* 88 Cal.App.4th 260, 105 Cal.Rptr.2d 674, 689–90 (2001) (holding that an attorney was entitled to recover his fees even though he had waived payment from the client but not if the payment came from another source, such as an insurance company).

Because of the broad scope of the term "incur" and the narrow scope of the *Trope* rule, we conclude that the district court was correct in deciding that a California court, faced with the instant case, would allow Sayas and Q & B to recover their fees. Under California law, recovery is permissible provided the fees were incurred, which is evidenced by an obligation by the client to pay attorneys' fees, the existence of an attorney-client relationship, and distinct interests between the attorney and the client. All of these factors are present in this case. The district court found that an attorney-client relationship existed between Sayas and Q & B and

between Q & B and Sayas[3] and that each firm had become liable to the other firm for a specific amount of fees incurred in recovering the contingent fee in the underlying action. The Desais scoff at the notion that Sayas and Q & B actually represented each other, but they have offered no substantive evidence for us to conclude that the district court's findings in that regard were clearly erroneous.

As attorneys for one another, Sayas and Q & B owed each other a fiduciary duty and a duty of attorney-client confidentiality. Although they appeared to have identical interests in the underlying fee dispute-collecting the contingent fee-some of their interests could have ended up being different. For example, had they lost the underlying fee dispute, they may have incurred disparate liabilities to the Desais for their respective roles in the settlement with Farmers that spawned the fee dispute. Had attorneys' fees not been awarded, the two firms may have ended up in a dispute over whether one firm was entitled to a greater share of the contingent fee for performing more work on the litigation to recover the contingent fee.

One may question the wisdom of these firms hiring each other, given the conflicts of interest that could easily have arisen between them. But questionable judgment should not preclude them from recovering fees that they were entitled to recover under the express terms of the retainer agreement with the Desais. Accordingly, the judgment of the district court is **AFFIRMED.**

**HUG, Circuit Judge, Dissenting:**

I respectfully dissent. The two firms involved jointly undertook the representation of the Desais and were joint parties to the retainer agreement with the Desais. The two firms were to receive a contingent fee and, thus, as joint parties to the initial contingent fee agreement they jointly sued the Desais to recover their contingent fee. Having won on that suit, they now seek to recover the attorneys' fees that were occasioned in their suit to collect their contingent fee. (California law precludes them from recovering such fees if each represented its own interest. *See Trope v. Katz*, 11 Cal.4th 274, 45 Cal.Rptr.2d 241, 902 P.2d 259 (1995)). *Trope* prevents disparate treatment of pro se litigants that would result from allowing attorneys to recover their own fees when self-represented but no similar award to other litigants who choose to represent themselves. *Id.* at 252, 902 P.2d 259. The fact that each law firm now claims to have been engaged to represent the other is a device that should not overcome the policy of *Trope*. It is significant that there is no difference here in the legal position of either firm in their litigation concerning the contingent fee because the entire fee would be recovered jointly and the proceeds shared equally.

The pleadings from the proceedings below that are part of our record on appeal show that both firms filed papers jointly: one complaint or one motion always served to represent both firms' interests and representation. All allegations, demands and causes of action were represented in a single presentation, showing clearly that

---

**3.** At oral argument, counsel for Sayas and Q & B informed us that a client retainer agreement was executed between the two firms. This assertion is corroborated by the firms' declarations submitted to the district court attesting to the hours each firm devoted to the case. The retainer agreement was never made part of the record, however, presumably because the Desais did not directly challenge whether an attorney-client relationship existed, but rather focused on the alleged "sham" nature of the billing arrangement between the firms.

the legal position of the two firms was identical. There appears no justification that each had different bills for their alleged representation of the other and no justification for Quisenberry having expended over $45,000 to represent Sayas while Sayas allegedly spent around $16,000 to represent Quisenberry. Indeed, Quisenberry's own billing statement submitted as proof of hours billed to represent Sayas, shows Quisenberry—not Sayas—as the client's name on the statement.[1]

Under the circumstances here, Quisenberry's billing statement strongly suggests that any fees "incurred" were for its own self-representation. Allowing recovery of such fees where the two law firms' efforts obviously were for a joint recovery would permit the firms to circumvent the policy of *Trope* on a technicality. While the California supreme court has narrowed *Trope* by allowing a corporation to recover attorneys' fees for representation by in-house counsel in *PLCM Group, Inc. v. Drexler*, 22 Cal.4th 1084, 95 Cal.Rptr.2d 198, 997 P.2d 511 (2000), *Trope* and its policy still stand and control the facts here. An attorney billing time to the corporation for work done is distinct from one firm apparently representing itself to recover its own fees in a joint effort with another firm that represented the same client in the same matter to recover a contingent fee to be shared. The former is billing for an attorney's time spent representing another entity while the latter is the very self-representation for which recovery is precluded under *Trope*.

The *PLCM* court noted that the in-house counsel was not representing his own personal interest in the litigation for which fee recovery was sought. *Id.* at 198, 997 P.2d 511. Similarly, *Gilbert v. Master*

*Washer & Stamping Co.*, 87 Cal.App.4th 212, 104 Cal.Rptr.2d 461 (2001), allowed recovery of attorneys' fees to a lawyer sued in his personal capacity seeking contractual attorneys' fees for the representation provided to him by other members of his law firm. *Id.* at 468. *Gilbert* noted that the attorney was permitted recovery of fees for work done by others on his behalf where his colleagues represented his personal interest which was separate and distinct from their own or even that of the firm. *Id.* Here, the two firms had a joint interest in a joint recovery of their attorneys' fees for their joint representation of the Desais. There is no evidence that either represented a separate and distinct interest of the other. Accordingly, I would reverse the district court's award of these fees.

---

1. The billing statement on Quisenberry's letterhead shows the following:

   Client:      Quisenberry & Barbanel
   REGARDING:  DESAI