Filed 4/20/21  Westside Investments v. Dolberry CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| WESTSIDE INVESTMENTS, INC., <br><br> Plaintiff and Respondent, <br><br> v. <br><br> RENEE L. DOLBERRY et al., <br><br> Defendants and Appellants. | B299033 <br><br> (Los Angeles County Super. Ct. No. SC121620) |

APPEAL from a postjudgment order of the Superior Court of Los Angeles County, Lisa Hart Cole, Judge.  As to Tim Dolberry, the appeal is dismissed.  As to Renee Dolberry, the judgment is affirmed.

Karl Siganporia for Defendants and Appellants Renee L. Dolberry and Tim Dolberry.

Bishton Gubernick and Jeffrey S. Gubernick for Plaintiff and Appellant.

————————

Renee L. Dolberry and Tim Dolberry appeal the postjudgment order awarding Westside Investments, Inc., doing business as Marina Del Rey Toyota (MDR Toyota), $102,036.50 in attorney fees against Renee Dolberry pursuant to an attorney fee provision in Renee Dolberry's automobile lease agreement. The Dolberrys contend (1) the court erred in failing to apportion and limit attorney fees to those incurred in connection with Westside's contract claim against Renee Dolberry; (2) Westside is precluded from recovering attorney fees because the named partner of its counsel is also a majority shareholder in Westside; and (3) the attorney fee order is wholly disproportionate to, and patently unreasonable in light of, the $13,479.41 net damages awarded. We dismiss Tim Dolberry's appeal for lack of standing. As to Renee Dolberry, we affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *The Automobile Lease*

On July 20, 2013 Renee Dolberry (Dolberry) signed an agreement with MDR Toyota to lease a 2013 Toyota Highlander.[1] Dolberry gave MDR Toyota two post-dated checks as a down payment and drove the Highlander off the lot the same day. The next day Dolberry and her husband contacted the dealership to complain about the transaction. In an email to the dealership's general manager, Kevin Ray, Dolberry insisted she had been coerced into leasing a vehicle when she had been clear with MDR Toyota she wanted to purchase one; misled into believing the

---

[1] Our factual and procedural summary of the underlying action borrows from our prior opinion affirming the judgment in favor of Westside. (See *Westside Investments*, *Inc. v. Dolberry* (June 25, 2018, B276462) [nonpub. opn.].)

dealership would pay the balance of her loan on her trade-in vehicle at no cost to her; and sexually harassed by the dealership's finance manager.[2]

In response to Dolberry's email, Ray apologized for Dolberry's experience at MDR Toyota and offered her the choice of negotiating a new purchase price for the Highlander or rescinding the entire transaction. Ray also offered an additional $1,000 to compensate her for any inconvenience. Dolberry rejected that offer. She also rejected Ray's subsequent offer of a $4,000 reduction in the capitalized cost of the Highlander or rescission of the lease agreement with a $4,000 cash payment, telling Ray the offer was inadequate and she required additional compensation. Ray responded that Dolberry would need to return the Highlander before MDR Toyota would consider any further request. Dolberry refused to return the Highlander and stopped payment on the two checks she had issued as a down payment. Although MDR Toyota initiated repossession efforts, Dolberry and her husband, Tim Dolberry, secreted the Highlander; and MDR Toyota was unable to locate it.

2. *Westside's Lawsuit*

In November 2013 Westside sued the Dolberrys for breach of contract, conversion and fraud.[3] The Dolberrys filed a cross-complaint, which was dismissed after the court sustained

---

[2] Dolberry alleged the dealership's finance manager had made suggestive and inappropriate comments, including telling her she looked younger than her age; asking her whether she knew how to say "I love you" in French; and assuring her that she would give him a "big hug" at the end of the transaction.

[3] Tim Dolberry was named as a defendant only in the causes of action for conversion and fraud.

Westside's demurrer with leave to amend and the Dolberrys failed to file an amended cross-complaint.

In April 2015 Westside filed an application for writ of possession to compel the Dolberrys to return the Highlander. Following a hearing the trial court granted the writ and issued an interlocutory order awarding MDR Toyota possession of the Highlander. By that time Dolberry had possessed the Highlander for 21 months without making any payments under the lease.

Following a bench trial, the court found Dolberry had breached the lease and determined Westside was the prevailing party on its contract claim under the lease. In its statement of decision the court explained it would have also found Dolberry liable for both conversion and fraud had it not found her liable under the contract, reasoning duplicative damages were not permitted.

Persuaded by Dolberry's counsel that Westside's net damages could not be determined without ordering the car sold (despite evidence at trial of the car's fair market value), the court in its statement of decision awarded Westside the value of the lease, $32,749.41, "less the amount received for the sale of the vehicle," and ordered Westside to sell the Highlander and submit evidence of the sale. After Westside provided posttrial evidence it sold the car on February 5, 2016 for $18,150, the court entered judgment for Westside in the amount of $16,259.41.[4]

---

[4] The $16,259.41 net damage award represented the amount awarded in the statement of decision ($32,749.41) less the amount received by MDR Toyota when it sold the car ($18,150), plus unpaid sanctions in the amount of $1,660 the court had issued against Dolberry in December 2014.

3. *Dolberry's Motion To Vacate and First Appeal*

Dolberry moved to vacate the judgment and for a new trial. Among other things, Dolberry argued Westside had misrepresented its net damages. According to Dolberry, Westside's posttrial evidence that it had sold the Highlander to a wholesaler on February 5, 2016 for $18,150 was false; the Highlander was actually sold three days later to a different buyer for $20,930, $2,780 more than Westside had claimed. In response, Westside apologized for the error, offered a declaration from its chief financial officer purporting to explain the mistake and urged the court to amend the judgment to reduce the damage award by $2,780 or to credit Dolberry with that amount in partial satisfaction of the judgment. Troubled by the revelations in Dolberry's posttrial motion, the court set the matter for a hearing, but scheduled the hearing after the 60-day jurisdictional period to hear the motion had elapsed. (Code Civ. Proc., § 663a, subd. (b).) Accordingly, the motion to vacate the judgment was denied by operation of law.

Dolberry filed a timely notice of appeal from the judgment. We affirmed the judgment on appeal and directed the trial court upon issuance of our remittitur to enter a partial satisfaction of the judgment in the sum of $2,780. (See *Westside Investments, Inc. v. Dolberry* (Jun. 25, 2018, B276462) [nonpub. opn.].) We also indicated the court's concerns about Westside's posttrial conduct could be addressed at a hearing on Westside's request for attorney fees, which the trial court indicated it would entertain following resolution of the appeal.

4. *Westside's Motion for Attorney Fees and Costs*

Following receipt of the remittitur by the trial court, Westside moved pursuant to the lease agreement and Civil Code section 1717 (section 1717) to recover $132,036.50 in attorney fees and $12,750.37 in costs in accordance with paragraph 29 of the lease.[5] Westside supported its motion with a declaration from its trial counsel Jeffrey S. Gubernick of the law firm Bishton Gubernick and accompanying billing statements.

Dolberry opposed the motion for attorney fees.[6] Despite our explanation in the prior appellate opinion that the postjudgment motion had been denied by operation of law, Dolberry asserted Westside's attorney fee request was premature because there had been no ruling on the postjudgment motion to strike the damage award based on Westside's fraud in presenting evidence of the sale of the Highlander. If the damages were struck due to Westside's fraud, Dolberry argued, she would be the prevailing party, not Westside. Dolberry also argued that Westside could not recover its attorney fees because a named partner of the law

[5]     Paragraph 29 of the lease provides in part, "If you are in default we may do any of the following after giving any legally required notices, and after expiration of any legally required cure or reinstatement periods: [¶] . . . [¶] v. require you to pay all of our expenses for taking these actions, including, but not limited to, expenses for repossession, transportation, storage, collection, and legal costs, including reasonable attorneys fees paid to an attorney who is not our salaried employee, as allowed by applicable law."

[6]     Because Tim Dolberry was not a party to the lease agreement and was not named as a defendant in Westside's cause of action for breach of contract, the motion for attorney fees was properly directed only to Renee Dolberry.

6

firm that represented Westside was also a majority shareholder of Westside. Dolberry did not object to Westside's request for costs of suit, raise the issue of apportionment or argue the amount of fees requested was unreasonable.

At the hearing on Westside's attorney fee motion, the court stated, "I think that the attorney's fees, although high, given the original nature of the action, and how easily this case could have been resolved on the day it was filed, was caused by—significantly caused by the defendants' choice in litigating the case in the manner in which it was litigated. I mean, I think this is a highly regrettable situation, because at the very core, this was a very simple case that the Dolberrys chose to exacerbate significantly by filing false claims for sexual harassment, then dropping it at the time of trial, by litigating the case in the manner in which they did, by secreting the car and not returning it until, basically, the trial had started." The court also explained it was cutting the amount of fees requested by $30,000: "The reason why I'm cutting the attorney fees is because, although the defense, in my opinion, created a significant amount of wasted time, both for the court and counsel, there were things that the plaintiff could have done" to streamline the case significantly.

On May 7, 2019 the court signed an amended judgment that granted Dolberry partial satisfaction of the judgment in accordance with our remittitur in the prior appeal and awarded Westside $12,750.37 in costs and $102,036.50 in attorney fees.[7]

---

[7]     Although labeled an amended judgment, the court's May 7, 2019 order following our affirmance of the judgment is properly considered a postjudgment order.

The Dolberrys filed a timely notice of appeal.[8]

## DISCUSSION

1. *Governing Law and Standard of Review*

Section 1717, subdivision (a), authorizes the trial court to award reasonable attorney fees to the prevailing party in a contract action if the contract specifically authorizes an award of such fees.[9] To ensure mutuality of remedy, section 1717 makes an attorney fee provision reciprocal even if it would otherwise be unilateral by its terms. (*PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1090 (*PLCM Group*); *Santisas v. Goodin* (1998) 17 Cal.4th 599, 610.)

A party seeking attorney fees pursuant to a fee shifting provision in a contract must demonstrate the fees incurred were reasonable. (*PLCM Group, supra,* 22 Cal.4th at p. 1095; see § 1717.) That reasonableness determination begins with "the lodestar," "the number of hours reasonably expended multiplied by the reasonable hourly rate." (*PLCM Group*, at pp. 1094-1095.)

---

[8] Westide asserts, Tim Dolberry acknowledges, and we agree, Tim Dolberry is not aggreived by the the attorney fee order, which the court issued against Renee Dolberry alone. Accordingly, the appeal of Tim Dolberry challenging the attorney fee award is dismissed for lack of standing. (Code Civ. Proc., § 902.)

[9] Section 1717, subdivision (a), provides, "In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs."

"'After the trial court has performed the calculations [of the lodestar], it shall consider whether the total award so calculated under all of the circumstances of the case is more than a reasonable amount and, if so, shall reduce the section 1717 award so that it is a reasonable figure.'" (*PLCM Group*, at pp. 1095-1096.) "'"A reduced award might be fully justified by a general observation that an attorney overlitigated a case or submitted a padded bill or that the opposing party has stated valid objections."'" (*Morris v. Hyundai Motor America* (2019) 41 Cal.App.5th 24, 38.)

We review the amount of fees awarded for abuse of discretion and the legal basis for the fee award de novo. (See *Mountain Air Enterprises, LLC v. Sundowners Towers, LLC* (2017) 3 Cal.5th 744, 751 ["'it is a discretionary trial court decision on the propriety or amount of statutory attorney fees to be awarded, but a determination of the legal basis for an attorney fee award is a question of law to be reviewed de novo'"]; *Orozco v. WPV San Jose, LLC* (2019) 36 Cal.App.5th 375, 406 [same].)

### 2. *Dolberry Has Forfeited Her Arguments on Apportionment and Reasonableness of Attorney Fees*

Citing the provision in the lease agreement limiting attorney fees to those reasonably necessary to enforce the lease following the lessee's default, Dolberry contends the court erred in failing to apportion Westside's attorney fees between its contract claim, for which reasonable attorney fees were authorized, and its tort claims, for which they were not. (See *Monster, LLC v. Superior Court* (2017) 12 Cal.App.5th 1214, 1226 ["[a]s a general matter, '[t]ort and other noncontract claims are not subject to section 1717 and its reciprocity principles'"]; see also *Santisas v. Goodin, supra,* 17 Cal.4th at p. 615; *Bell v.*

*Vista United School Dist.* (2000) 82 Cal.App.4th 672, 686-687 ["'[w]hen a cause of action for which attorney fees are provided by statute is joined with other causes of action for which attorney fees are not permitted, the prevailing party may recover only on the statutory cause of action'"].)

Dolberry did not make this argument in the trial court, depriving that court of the opportunity to consider whether the issues among all claims were so inextricably intertwined that apportionment was impracticable. (See *Reynolds Metals Co. v. Alperson* (1979) 25 Cal.3d 124, 129-130 ["[a]ttorney's fees need not be apportioned when incurred for representation on an issue common to both a cause of action in which fees are proper and one in which they are not allowed"]; *Akins v. Enterprise Rent-A-Car Co.* (2000) 79 Cal.App.4th 1127, 1133 [same]; *Abdallah v. United States Savings Bank* (1996) 43 Cal.App.4th 1101, 1111 [trial court reasonably found that appellants' various claims were ""'inextricably intertwined,'"" which made it "'impracticable, if not impossible, to separate the multitude of conjoined activities into compensable or noncompensable time units'"].) Accordingly, that argument has been forfeited. (See *Auburn Woods 1 Homeowners Association v. State Farm General Ins. Co.* (2020) 56 Cal.App.5th 717, 727 [argument on appeal regarding apportionment of expert witness fees was forfeited because appellant failed to raise argument in trial court]; *Wood v. Santa Monica Escrow Co.* (2007) 151 Cal.App.4th 1186, 1192 [failure to raise apportionment argument in trial court resulted in forfeiture of argument on appeal].)

Similarly, by failing to raise the issue in the trial court, Dolberry has also forfeited her contention the attorney fee award of $102,036.50 is patently unreasonable considering the net

10

damage award of little more than $13,000. (See *Doers v. Golden Gate Bridge etc. Dist.* (1979) 23 Cal.3d 180, 184-185, fn. 1 [it is fundamental that a reviewing court will ordinarily not consider claims made for the first time on appeal that could have been, but were not, presented to the trial court]; *Perez v. Grajales* (2008) 169 Cal.App.4th 580, 591-592 ["'[a]ppellate courts are loath to reverse a judgment on grounds that the opposing party did not have an opportunity to argue and the trial court did not have an opportunity to consider'"].) To the extent Dolberry suggests reversal is required as a matter of law because the attorney fees awarded are disproportionate to the amount of damages recovered, she is wrong. (See *Concepcion v. Amscan Holdings, Inc.* (2014) 223 Cal.App.4th 1309, 1321 ["the attorney fee award need not bear any specific relationship to the dollar amount of the recovery"]; *Taylor v. Nabors Drilling USA, LP* (2014) 222 Cal.App.4th 1228, 1251 [same].)

3. *Westside Was Not Prohibited From Recovering Attorney Fees*

Emphasizing that Norris Bishton, a named partner of the law firm that represented Westside, Bishton Gubernick, is a major shareholder in Westside, Dolberry contends Bishton Gubernick and Westside are essentially the same entity. From this dubious premise, and relying on *Trope v. Katz* (1995) 11 Cal.4th 274, 277 (*Trope*) and *Sands & Associates v. Juknavorian* (2012) 209 Cal.App.4th 1269 (*Sands*), Dolberry argues Westside is prohibited from recovering its attorney fees as the prevailing party in this action.

In *Trope, supra,* 11 Cal.4th 274 the Supreme Court held a law firm that represents itself is prohibited from recovering attorney fees as the prevailing party under a fee shifting

11

provision in a contract. (*Id.* at p. 277.) Among other things, the Court explained an attorney who chooses to litigate his or her own interests in propria persona incurs no fees within the meaning of section 1717. (*Id.* at pp. 280-281; see *PLCM Group, supra*, 22 Cal.4th at p. 1092 ["In *Trope* [citation] we considered whether an attorney who chooses to litigate in propria persona rather than retain an attorney to represent him in an action to enforce a contract containing an attorney fee provision can recover attorney fees under Civil Code section 1717. We answered the question in the negative. We explained that, by definition, the term 'attorney fees' implies the existence of an attorney-client relationship, i.e., a party receiving professional services from a lawyer"].)

Citing *Trope* for the proposition that a law firm represented in a lawsuit by one of its partners, members or associates is prohibited from recovering attorney fees as the prevailing party under a fee shifting provision, the court of appeal in *Sands, supra,* 209 Cal.App.4th 1269 held the designation of the firm's representative as "of counsel" did not exempt the law firm from this established rule: "[B]ecause the relationship between a law firm and 'of counsel' is close, personal, regular, and continuous, we conclude that a law firm and 'of counsel' constitute a single, de facto firm, and thus a law firm cannot recover attorney fees under a prevailing party clause when, as a successful litigant, it is represented by 'of counsel.'" (*Id.* at p. 1273; but see *Dzwonkowski v. Spinella* (2011) 200 Cal.App.4th 930, 938-940 ["of counsel" designation of law firm's counsel, without more, did not preclude firm's recovery of attorney fees pursuant to a fee shifting provision in a contract; whether fees were incurred pursuant to section 1717 depends on whether there exists "an

12

obligation to pay attorney fees, the existence of an attorney-client relationship and distinct interests between the attorney and client"].)

Relying on language in *Sands*, Dolberry argues Westside and Bishton Gubernick, by virtue of Norris Bishton's status as both a major shareholder in Westside and a named partner of Bishton Gubernick, share such a "close, personal, regular and continuous relationship" that Westside is prohibited from recovering its attorney fees. The argument is without merit. At the threshold, the court in *Sands* made clear it was not creating a general test dependent on factual findings whether a relationship between a litigant and its counsel was sufficiently close, personal, regular and continuous to prohibit recovery of fees. (See *Sands, supra,* 209 Cal.App.4th at p. 1295 [describing the court's intent to create "a bright-line rule" for "'of counsel'" attorneys]; see also *Ellis Law Group*, *LLP v. Nevada City Sugar Loaf Properties*, *LLC* (2014) 230 Cal.App.4th 244, 255 ["[d]espite the variation in practical arrangements for 'of counsel' attorneys, the *Sands* court created 'a bright-line rule' that attorneys of counsel to a law firm are sufficiently integral to a law firm as to disallow fees for defense of the firm"].)

More fundamentally, in contrast to counsel in *Trope* and *Sands,* Bishton Gubernick was not the litigant in this breach of contract action; Westside was. (Nor for that matter was Bishton Gubernick a shareholder of Westside; Norris Bishton occupied that role.) That Westside's success in the litigation may indirectly benefit its shareholders, including the named partner of its counsel, does not negate the undisputed attorney-client relationship between Westside and Bishton Gubernick or suggest

13

its attorney fees were not incurred for purposes of section 1717. (See generally *PLCM Group, supra,* 22 Cal.4th at p. 1093.)

Finally, quoting the California Supreme Court's July 11, 2020 statement on equality and inclusion, and citing several news reports and law review articles describing bait-and-switch tactics by car dealerships targeting communities of color, Dolberry insists an attorney fee order of more than $100,000 against a Black woman in a "run of the mill" contract case is yet another example of a justice system that, intentionally or by default, has failed Black people. There can be no doubt that the existence of structural racism and its pernicious effects throughout our system of justice, as in other aspects of society, must be urgently addressed. Nonetheless, as it may relate to the issue before us, we simply note Dolberry forfeited any challenge to the reasonableness of the fees awarded and her plea ignores her own conduct that led to unnecessary litigation costs, actions the trial court specifically cited as both regrettable and integral to its attorney fee ruling.

## DISPOSITION

Tim Dolberry's appeal is dismissed. The postjudgment order as to Renee Dolberry is affirmed. Westside is to recover its costs on appeal.


PERLUSS, P. J.

We concur:


SEGAL, J.          FEUER, J

14