Filed 9/23/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| GARY D. LEIPER as Trustee, etc., | 2d Civil No. B309986 (Super. Ct. No. P073688) (Ventura County) |
| Plaintiff, | |
| v. | |
| DENNIS GALLEGOS, | |
| Defendant; | |
| JOHN L. POOLE, | |
| Objector and Appellant; | |
| BANK OF THE WEST, as Trustee, etc., | |
| Objector and Respondent. | |

John L. Poole appeals from an order denying his motion for attorney fees and costs. Poole, an attorney, represented only himself. His appeal presents the following issue: May an attorney who represents only himself (pro se attorney) recover attorney fees and costs in equity under the common fund theory?

This theory is an exception to "the American rule, which provides that each party to a lawsuit must ordinarily pay his own attorney fees." (*Trope v. Katz* (1995) 11 Cal.4th 274, 278 (*Trope*).) In *Trope*, the California Supreme Court held "that an attorney who chooses to litigate in propria persona and therefore does not pay or become liable to pay consideration in exchange for legal representation cannot recover 'reasonable attorney's fees' under [Civil Code] section 1717," which applies to contractual awards of attorney fees. (*Id.* at p. 292.) The Supreme Court left open the question whether a pro se attorney may recover attorney fees under the nonstatutory common fund theory. (*Ibid.* ["we express no opinion regarding the applicability of our reasoning . . . in the context of the equitable exceptions [e.g., the common fund theory,] to the American rule"].)

We agree with the trial court as to attorney fees under the common fund theory. But we disagree with the court's ruling as to costs. We hold that an attorney who represents only himself and does not pay or become liable to pay consideration in exchange for legal representation may not recover attorney fees under the equitable common fund doctrine, but may seek recovery of legitimate, reasonable costs excluding attorney fees under that doctrine.

*Factual and Procedural Background*

This case arises from E.S. Barnard's 1939 lease of oil and gas rights beneath his land (Lot 7). The lessee was a major oil company. The facts are set forth in detail in our prior opinion, *Leiper v. Gallegos* (2019) 42 Cal.App.5th 394, 398-401 (*Leiper*). We briefly summarize them here.

In 1957 E.S. Barnard's company "dissolved and conveyed its interests in Lot 7, including the oil and gas lease, to its

2

shareholders (the Barnards and Pooles . . .).  In 1977, the [owners] entered into an agency agreement titled 'Barnard Oil Trust . . .' . . . for the distribution of oil and gas royalties." (*Leiper*, *supra*, 42 Cal.App.5th at p. 399.)

One of the Barnards defaulted on a tax bill.  In 1978 Lot 7 was sold at public auction and was eventually conveyed to Dennis Gallegos.  Gallegos claimed he was entitled to a share of the oil and gas royalties.  Because of his claim, the oil company suspended distribution of the royalties.  Gary Leiper, the trustee of the Barnard Oil Trust, tentatively settled the dispute with Gallegos.  The settlement provided that Gallegos would receive 5.714 percent of the royalties.  Appellant Poole, a fractional owner of the oil and gas rights, objected to the settlement.  Appellant claims that his interest in the royalties is "less than 1%."

Appellant "filed a petition to determine title and royalty rights." (*Leiper*, *supra*, 42 Cal.App.5th at p. 400.)  The oil company petitioned "to interplead the oil royalties . . . and deposited the money with the trial court." (*Ibid*.)  According to a document filed in March 2020, the amount of the interpleaded funds was "at least $500,000."  The trial court "ordered Leiper to file a petition [to] quiet title and [for] declaratory relief. [Gallegos], in response to [Leiper's] petition, asked the trial court to confirm . . . that the 1978 tax deed conveyed both the surface rights and subsurface oil and gas rights." (*Ibid*.)

The trial court "expressly ruled that [Gallegos] had no interest in the oil and gas royalties because the tax collector 'didn't foreclose upon those rights.'" (*Leiper*, *supra*, 42 Cal.App.5th at p. 401.)  Gallegos appealed.  We upheld the trial court's ruling.  We concluded that Gallegos "is the surface owner

3

to Lot 7 but he does not now own an interest in the oil and gas under Lot 7." (*Id.* at p. 398.)

Appellant moved to recover his reasonable attorney fees and costs. He claimed that he had "conceived the theory upon which the Court of Appeal[] ruled in favor of the Barnards." Appellant sought "$50,745 for fees and [$1,572.75] for costs for work successfully defending the trial court judgment on appeal." In addition, he sought "$46,020 for fees and $1,269.29 for costs for work performed in the Superior Court." Relying on the equitable common fund theory, appellant requested that payment be made from the interpleaded oil and gas royalties. During appellate oral argument, appellant asserted that, but for his efforts, Gallegos would have received 5.714 per cent of the royalties.

Some members of the Barnard and Poole families opposed appellant's motion for attorney fees "because he was representing his own interests individually and the money [he requested] would deplete the amount of royalties interpleaded with the Court and available for distribution to family members."[1] One family member emailed the trial court: "In my view, [appellant's] personal interference in this case has been counterproductive." In September 2017 another family member wrote a letter to the

---

[1] Appellant estimated "that as of 4/18/2021, $331,479.09[] ha[d] been paid or authorized to be paid [from the interpleaded funds] to attorneys and the referee," not including "$6,335 authorized to be paid to Leiper on April 14, 2021." If appellant's request for attorney fees and costs were granted, the amount paid would increase to $437,421.13.

court in which she complained, "My grandparents and my father would be distressed and appalled that a single member [appellant] of a large and extended family has tied up Court's time and money in his personal quest."

During appellate oral argument, counsel for respondent Bank of the West (Bank) explained that family members were upset because, as a result of the litigation, the stream of royalty payments to the beneficiaries stopped for "almost five full years." Family members were concerned that the interpleaded funds would be drained by the payment of fees.

The trial court denied appellant's motion for attorney fees and costs. It said: "Here the issue is not if the common fund theory applies; the Court already has applied it to the attorney fee request by Austin Barnard Trust's attorney.[2] The issue is if [appellant] can be paid 'attorney fees' for his self-representation in this matter. [¶] [Appellant] did not 'employ' an attorney, did not incur attorney's fees, and there is no attorney/client relationship. [Appellant], who is a California licensed attorney, chose to represent himself in this litigation."[3] Because appellant

_____

[2] The request was made by Bank, co-trustee of the Austin M. Barnard Trust. Unlike appellant, Bank retained counsel. It filed a respondent's brief in both appellant's present appeal and Gallegos's prior appeal. Relying on the common fund theory, the trial court granted Bank's motion for attorney fees incurred in Gallegos's appeal. The court ordered that Bank's attorney fees "shall be paid from the funds interpleaded with the Court."

[3] Although appellant is a licensed California attorney, he was employed in a field unrelated to law when he sought recovery of his attorney fees. Appellant declared, "I work full time as a software engineer at [name deleted] Corporation, so I have to attend to this matter outside of business hours."

represented himself, the court ruled that he is not entitled to attorney fees under the common fund theory.  As to appellant's request for costs excluding attorney fees, the court stated, "The Court denies [appellant's] request for fees, and in doing so, denies assoc[]iated costs as well."

### Standard of Review

"'''"An order granting or denying an award of attorney fees is generally reviewed under an abuse of discretion standard of review; however, the "determination [at issue here] of whether the criteria for an award of attorney fees and costs have been met is a question of law."  [Citations.]'''"  [Citation.]  An issue of law concerning entitlement to attorney fees is reviewed de novo." (*Carpenter & Zuckerman, LLP v. Cohen* (2011) 195 Cal.App.4th 373, 378.)

### The Common Fund Theory

"The Legislature has . . . enacted several statutory exceptions to the American rule, and [the California Supreme Court has] relied on [its] 'inherent equitable authority' to develop three additional exceptions—the common fund, substantial benefit, and private attorney general theories of recovery."[4] (*Trope, supra*, 11 Cal.4th at p. 279.)  Appellant states:  "This appeal is an attempt to require the [trial] court to engage in the consideration of whether [appellant's] request [for attorney fees and costs] is reasonable under the common fund doctrine." "Specifically, the issue here concerns a California licensed attorney acting pro se seeking compensation from a common fund.  It is pure equity, there are no statutes involved."

---

[4] "Code of Civil Procedure section 1021.5 codified the private attorney general theory."  (*Mejia v. City of Los Angeles* (2007) 156 Cal.App.4th 151, 157, fn. 4.)

6

"[T]he so-called 'common fund' exception to the American rule regarding the award of attorneys fees . . . , is grounded in 'the historic power of equity to permit . . . a party preserving or recovering a fund for the benefit of others in addition to himself, to recover his costs, including his attorneys' fees, from the fund of property itself . . . .'" (*Serrano v. Priest* (1977) 20 Cal.3d 25, 35 (*Serrano*).) "[W]here [a party's] efforts have not effected the creation or preservation of an identifiable 'fund' of money out of which they seek to recover their attorneys fees, the 'common fund' exception is inapplicable." (*Id.* at pp. 37-38.)

"The purpose of the doctrine is to allow a party, who has paid for counsel to prosecute a lawsuit that creates [or preserves] a fund from which others will benefit, to require those other beneficiaries to bear their fair share of the litigation costs. [Citation.] In other words, the common fund doctrine permits the plaintiffs' attorneys to recoup their fees from the fund." (*Northwest Energetic Services, LLC v. California Franchise Tax Bd.* (2008) 159 Cal.App.4th 841, 878.) "Because the common fund doctrine 'rest[s] squarely on the principle of avoiding unjust enrichment' [citations], attorney fees awarded under this doctrine are not assessed directly against the losing party (fee shifting), but come out of the fund established by the litigation, so that the beneficiaries of the litigation, not the defendant, bear this cost (fee spreading)." (*Lealao v. Beneficial California, Inc.* (2000) 82 Cal.App.4th 19, 27.)

### Bruno v. Bell

Pursuant to *Bruno v. Bell* (1979) 91 Cal.App.3d 776, appellant may not recover attorney fees under the common fund doctrine. In *Bruno* the court held that a pro se attorney may not recover attorney fees under the common fund doctrine for two

7

reasons.  First, "[n]o identifiable sum of money has been created, preserved or recovered . . . ."  (*Id*. at p. 783.)  Second, "the successful party litigant has incurred no liability for attorney fees in winning the suit.  Instead, [he] has chosen to volunteer his own time and energy as counsel in pro. per. in pursuing his action.  Thus the underlying rationale of the theory that class members who have monetarily benefitted from a representative's expenditure of attorney fees should be required to share the burden of this expense—is eliminated."  (*Ibid*.)

*Holding of Bruno Is Not Undermined by*
*Subsequent 1979 Supreme Court Decision*

*Bruno* was decided eight months before the California Supreme Court's decision in *Consumers Lobby Against Monopolies v. Public Utilities Com.* (1979) 25 Cal.3d 891 (*CLAM*).)  There, the court held that the Public Utilities Commission (PUC) has jurisdiction under the common fund doctrine to award "representative [not attorney] fees and costs" to a nonlawyer who appears without counsel "in a representative capacity" before the PUC in a quasi-judicial reparation action. (*Id*. at pp. 897, 915.)[5]  In a footnote the court criticized prior decisions holding that a pro se attorney cannot recover attorney fees in a judicial proceeding:  "[T]he logic of past decisions that do not allow an attorney to recover fees when he appears on his own behalf is unclear.  Although such an attorney does not pay a fee or incur any *financial* liability therefor to another, his *time spent* in preparing and presenting his case is not somehow rendered less valuable because he is representing himself rather than a third party.  Accordingly, it would appear he should be

_____

[5] *CLAM* was disapproved on other grounds in *Kowis v. Howard* (1992) 3 Cal.4th 888, 896, 899.)

8

compensated when he represents himself if he would otherwise be entitled to such compensation, absent a showing in a particular case that such an award would place his interests in conflict with those whom he represents." (*Id*. at p. 915, fn. 13.)

The footnote supports appellant's contention, but "it is pure dictum." (*Trope*, *supra*, 11 Cal.4th at p. 284.) As to the Supreme Court's holding in *CLAM*, the case is distinguishable because it involved a nonlawyer appearing without counsel in an administrative proceeding before the PUC, not a pro se attorney such as appellant appearing in a judicial proceeding. In addition, the nonlawyer appeared in a representative capacity on behalf of others. The *CLAM* court noted that, in contrast to judicial proceedings, "[i]n Public Utilities Commission proceedings . . . the participants are not required to be licensed attorneys, and it is common for such persons to make appearances on behalf of others." (*CLAM*, *supra*, 25 Cal.3d at pp. 913-914.) Unlike the nonlawyer in *CLAM*, appellant insists that he "only represented himself." Finally, the nonlawyer in CLAM sought to recover "representative fees for the reasonable value of his efforts," not attorney fees. (*Id*. at p. 898.)

*An Attorney Who Represents Only Himself Cannot*
*Recover Attorney Fees Under the Common Fund Theory*

The common fund theory permits a party to recover his attorney fees from a fund he has created, recovered, or preserved. "[T]he usual and ordinary meaning of the words 'attorney's fees,' both in legal and in general usage, is the consideration that a litigant actually pays or becomes liable to pay in exchange for legal representation." (*Trope*, *supra*, 11 Cal.4th at p. 280.) This definition of "attorney's fees" was the "established legal meaning

9

at the time the Legislature enacted [Civil Code] section 1717" in 1968. (*Trope*, at p. 282.) The legal meaning is the same today.

It follows that appellant may not recover attorney fees under the common fund theory. Appellant did not expend attorney fees or become liable for the expenditure of such fees. "'[O]ne who expends attorneys' fees in winning a suit which creates a fund from which others derive benefits, may require those passive beneficiaries to bear a fair share of the litigation costs.'" (*Serrano*, *supra*, 20 Cal.3d at p. 35.) "A party who acts on his or her own behalf does not thereby generate an expense that the party has become obligated to pay." (*Musaelian v. Adams* (2009) 45 Cal.4th 512, 517 (*Musaelian*).) Moreover, because appellant represented himself, no attorney-client relationship existed. "[B]y definition, the term 'attorney fees' implies the existence of an attorney-client relationship, i.e., a party receiving professional services from a lawyer."[6] (*PLCM Group, Inc. v. Drexler* (2000) 22 Cal.4th 1084, 1092.)

---

[6] See *Duncan v. Poythress* (11th Cir. 1985) 777 F.2d 1508 (implicitly overruled by *Kay v. Ehrler* (1991) 499 U.S. 432 (*Kay*)), diss. opn. of Godbold, C.J., at p. 1518: "[W]e have simply been unable to find any definition which permits a decision that a *pro se* lawyer has an attorney. Set forth in an Appendix to this opinion are the definitions found in over two dozen dictionaries. Without exception they define the word 'attorney' in terms of someone who acts for *another,* someone who is employed as an agent to represent *another,* someone who acts at the appointment of *another*. A basic principle of agency law is that '[t]here is no agency unless one is acting for and in behalf of *another,* since a man cannot be the agent of himself.' [Citation.] For there to be an attorney in litigation there must be two people. Plaintiff here appeared *pro se.* The term '*pro se*' is defined as an individual acting 'in his own behalf, in person.' By definition, the person

10

Public policy considerations support the denial of attorney fees to pro se attorneys. The award of such fees would be inequitable to a nonlawyer party who has not retained counsel and therefore cannot qualify for an award of attorney fees. The result "'would in effect create two separate classes of pro se litigants – those who are attorneys and those who are not – and grant different rights and remedies to each.' [Citation.] Such disparate treatment between attorney and nonattorney litigants would be viewed by the public as unfair, allowing only lawyer litigants to qualify for fee awards." (*Musaelian*, *supra*, 45 Cal.4th at p. 519.)

"[C]ourts of our sister states have . . . recognized the unfairness of such discrimination. For example, in *Swanson & Setzke, Chtd. v. Henning* [(Idaho 1989)] 774 P.2d 909, 913, the court declined to award attorney fees to an attorney litigant primarily because 'The system would be one-sided, and would be viewed by the public as unfair, if one party (a lawyer litigant) could qualify for a fee award without incurring the potential out-of-pocket obligation that the opposing party (a nonlawyer) ordinarily must bear in order to qualify for a similar award . . . .'" (*Trope*, *supra*, 11 Cal.4th at p. 286; see also *Smith v. Batchelor* (Utah 1992) 832 P.2d 467, 473-474, cited in *Trope*, *supra*, at p. 286 ["allowing pro se attorneys to recover fees while lay pro se

_____

appearing 'in person' has no attorney, no agent appearing for him before the court. The fact that such plaintiff is admitted to practice law and available to be an attorney for others, does not mean that the plaintiff has an attorney, any more than any other principal who is qualified to be an agent, has an agent when he deals for himself."

litigants go uncompensated . . . discriminates between lay and attorney litigants.  It is a sufficient advantage to a lawyer-litigant that he or she is capable of competently presenting his or her claim without the need of retained counsel.  Because we are loath to enhance that advantage by giving the lawyer-litigant recovery not only as a successful party, but also as that party's attorney, we hold that pro se litigants should not recover attorney fees, regardless of their professional status"].)

The denial of attorney fees to pro se attorneys furthers the legitimate policy of "discourag[ing] attorneys from electing to appear in propria persona[.] . . . [S]uch self-representation may often conflict with the general public and legislative policy favoring the effective and successful prosecution of meritorious claims.  [In *Kay, supra,* 499 U.S. at pp. 437-438,] [t]he high court observed that 'Even a skilled lawyer who represents himself is at a disadvantage in contested litigation.  Ethical considerations may make it inappropriate for him to appear as a witness.  He is deprived of the judgment of an independent third party in framing the theory of the case, evaluating alternative methods of presenting the evidence, cross-examining hostile witnesses, formulating legal arguments, and in making sure that reason, rather than emotion, dictates the proper tactical response to unforeseen developments in the courtroom.  The adage that "a lawyer who represents himself has a fool for a client" is the product of years of experience by seasoned litigators.' [Citation.]" (*Trope, supra,* 11 Cal.4th at p. 292; see also *White v. Arlen Realty & Development Corp.* (4th Cir. 1980) 614 F.2d 387, 388 ["It is axiomatic that effective legal representation is dependent not only on legal expertise, but also on detached and objective perspective.  The lawyer who represents himself necessarily falls

short of the latter"].)  There is also a danger that a pro se attorney will lack expertise in the particular area of the law under consideration.  "Permitting a fee award to a *pro se* litigant, even one who is a lawyer, would . . . 'create a disincentive to employ counsel.'"  (*Pietrangelo v. U.S. Army* (2d Cir. 2009) 568 F.3d 341, 344.)

The denial of attorney fees to pro se attorneys will not frustrate or undermine the purposes of the common fund rule.  "'The bases of the equitable rule . . . appear to be these: fairness to the successful litigant, who might otherwise receive no benefits because his recovery might be consumed by the expenses; correlative prevention of an unfair advantage to the others who are entitled to share in the fund and who should bear their share of the burden of its recovery; encouragement of the attorney for the successful litigant, who will be more willing to undertake and diligently prosecute proper litigation for the protection or recovery of the fund if he is assured that he will be promptly and directly compensated should his efforts be successful. "  (*Quinn v. State of California* (1975) 15 Cal.3d 162, 168.)  Because a pro se attorney does not pay attorney fees, there is little risk that "'his recovery might be consumed by [his] expenses,'" resulting in "'an unfair advantage to the others who are entitled to share in the fund.'"  (*Ibid*.)  An award of attorney fees is not necessary to provide "'encouragement of the attorney for the successful litigant'" because a pro se attorney has not retained counsel.  (*Ibid*.)

The denial of attorney fees to pro se attorneys is supported by *Zucker v. Westinghouse Elec.* (3d Cir. 2004) 374 F.3d 221 (*Zucker*).  There, an attorney successfully represented himself in a shareholder derivative suit.  He sought an award of attorney

13

fees under the common fund doctrine. The district court ruled that the attorney was not entitled to fees because he had represented himself and therefore had not incurred fees. The attorney appealed.

Relying on *Kay*, *supra*, 499 U.S. 432, the Court of Appeals affirmed. The court reasoned: "[A] rule barring attorney-objectors from recovering attorney's fees would blunt any temptation of attorneys to 'advance garden variety objections' in order to recover a salary of fees. . . . Denial of a fee award to attorneys who represent themselves will serve as a prophylactic to deter those attorneys, hopefully few, who may be guided by financial incentives to pursue unnecessary litigation or to provide representation that is not sufficiently guided by objective, rational decision-making. And we decline to create such an incentive today. [¶] . . . [W]e affirm the continued vitality of the common fund doctrine and its ethos of making-whole litigants who pursued shareholder-objector actions that have conferred a material benefit upon a corporation. We merely decline to endorse an interpretation of the common fund doctrine that creates untoward incentives for attorneys to pursue unnecessary actions for pecuniary gain or to pursue such actions without the benefit of the reasoned and detached judgment that attends the attorney-client relationship." (*Zucker*, *supra*, 374 F.3d at pp. 229-230, fn. omitted.)[7]

---

[7] But see *Moro v. State* (Or. 2016) 384 P.3d 504, 513-514, which criticized *Zucker*. The Supreme Court of Oregon concluded that two self-represented attorneys were entitled to an award of attorney fees under the common fund doctrine to avoid "the unjust enrichment that would result from allowing nonparties to enjoy the benefits of the litigation without contributing to the costs of the litigation." (*Id*., at p. 512.) The court explained:

*Recovery of Costs Excluding Attorney Fees*

Appellant notes:  "[The trial court] denied costs on the same basis [it] denied the [attorney] fees.  [In its respondent's brief] Bank cites no authority that the common fund doctrine prevents someone whose efforts help preserve the fund to be denied reimbursement of costs."  (Record citations and some capitalization omitted.)

The common fund doctrine permits "'a party preserving or recovering a fund for the benefit of others in addition to himself, to recover his *costs, including his attorneys' fees*, from the fund or property itself . . . .'"  (*Serrano*, *supra*, 20 Cal.3d at p. 35, italics added; accord, *City and County of San Francisco v. Sweet* (1995) 12 Cal.4th 105, 110.)  The doctrine "rests on the principle that those who have been 'unjustly enriched' at another's expense should under some circumstances bear their fair share of the *costs* entailed in producing the benefits they have obtained."  (*Woodland Hills Residents Assn., Inc. v. City Council* (1979) 23 Cal.3d 917, 943, italics added.)

If appellant were seeking costs under statutory authority instead of the court-made common fund doctrine, as a prevailing party he would be entitled to seek recovery of his costs excluding

---

"[T]he litigation benefited nonparty [Public Employee Retirement System] members by invalidating [cost-of-living] reductions, and both [attorneys] participated in the litigation by performing legal work as lawyers.  That remains true even though [they] performed that work in a self-represented capacity.  As a result, [they] are entitled to an attorney-fee award necessary to avoid unjust enrichment."  (*Id*. at p. 514.)  A "special master recommended no award of attorney fees . . . because they were acting as *pro se* litigants rather than as attorneys."  (*Id*. at p. 509.)

15

attorney fees pursuant to Code of Civil Procedure section 1032 (section 1032). "Section 1032 is the fundamental [statutory] authority for awarding costs in civil actions." (*Scott Co. of California v. Blount, Inc.* (1999) 20 Cal.4th 1103, 1108.) "Section 1033.5 of the Code of Civil Procedure [section 1033.5] . . . specifies the 'items . . . allowable as costs under Section 1032.'" (*Ibid*.) Attorney fees are one of many items allowable as costs under sections 1032 and 1033.5. (See § 1033.5, subds. (a)(10), (c)(5)(A) & (B).)

Since a prevailing pro se party is entitled to seek costs excluding attorney fees under sections 1032 and 1033.5, a prevailing pro se party should be entitled to seek similar costs under the common fund doctrine. We perceive no reason why the recovery of costs excluding attorney fees should be permitted as to the former party but barred as to the latter party. Such disparate treatment would be improper.

Thus, eligibility to recover costs excluding attorney fees is not dependent on eligibility to recover attorney fees. The trial court erroneously ruled: "[B]ecause he could not have incurred fees, because he did not hire representation, therefore, the costs would be ineligible as well." The award of costs excluding attorney fees under the common fund doctrine is a matter within the trial court's sound discretion. (*Estate of Gump* (1982) 128 Cal.App.3d 111, 118 ["application of the [common fund] doctrine is committed to the sound discretion of the court"].)

*Judicial Notice*

Appellant claims that the trial court erroneously denied his request for judicial notice of five documents filed in Gallegos's prior appeal and an unpublished opinion in an unrelated case.

16

The court stated, "These issues have already been addressed by the appellate court."

We need not determine whether the trial court erred in denying the request for judicial notice.  If it had erred, a reversal would be required only if the error had resulted in a miscarriage of justice.  Appellant has failed to show that the alleged error prejudiced him.  (See Cal. Const., art. VI, § 13 [no reversal if error did not result in miscarriage of justice]; Code Civ. Proc., § 475 [no judgment shall be reversed by reason of any error unless the error was prejudicial and a different result would have been probable without such error]; *Paterno v. State of California* (1999) 74 Cal.App.4th 68, 106 ["Because of the need to consider the particulars of the given case, rather than the type of error, the appellant bears the duty of spelling out in his brief exactly how the error caused a miscarriage of justice"].)

*Disposition*

The order denying appellant's motion for attorney fees is affirmed.  The order denying his motion for costs excluding attorney fees is reversed.  The matter is remanded to the trial court with directions to conduct a noticed hearing and exercise its discretion whether to grant appellant's motion to recover his claimed costs excluding attorney fees under the common fund doctrine.  We express no opinion as to how the trial court should rule on this issue.  The parties shall bear their own costs on appeal.

<u>CERTIFIED FOR PUBLICATION.</u>

                                    YEGAN, J.

We concur:


        GILBERT, P. J.


        PERREN, J.

Roger L. Lund, Judge

Superior Court County of Ventura

_____

John L. Poole, in pro. per., for Objector and Appellant.

Musick, Peeler & Garrett and Cheryl A. Orr, for Objector and Respondent.