Filed 12/31/25

**CERTIFIED FOR PARTIAL PUBLICATION***

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| NICHOLAS HONCHARIW et al., | B337927 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. 21STCV25191) |
| v. | |
| PMF CA REIT, LLC, et al., | |
| Defendants and Appellants. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Bruce G. Iwasaki, Judge. Affirmed in part and reversed in part.

Nicholas Honchariw, in pro. per., for Plaintiffs and Appellants.

---

* Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication with the exception of plaintiffs' cross-appeal.

Finlayson Toffer Roosevelt & Lilly and Matthew E. Lilly, for Defendants and Appellants.

─────────────────────

These appeals arise out of a $6.2 million mortgage loan made by hard money lender PMF CA REIT, LLC and its affiliated companies (collectively, lenders) to Nicholas and Sharon Honchariw (collectively, plaintiffs).[1] When plaintiffs missed a payment due under the loan, lenders imposed a default interest rate on the loan balance, which increased the interest rate from 8.99 percent to 19.50 percent. Plaintiffs refinanced the loan with another lender, paid off the loan balance, and sued lenders to recover the default interest payments and statutory penalties. The case was referred to a referee, who found for plaintiffs on one of their four causes of action and awarded them default interest payments of $261,489, plus attorney fees of $251,200. The trial court entered judgment on the referee's award. Lenders appealed from the attorney fee award, and plaintiffs cross-appealed from the denial of their claim for treble damages under Business and Professions Code section 10242.5.

In the published portion of this opinion, we conclude that because plaintiffs were self-represented, *Trope v. Katz* (1995) 11 Cal.4th 274 (*Trope*) precluded an award to them of attorney fees. In the unpublished portion of this opinion, we conclude that plaintiffs forfeited their appellate contention that they were entitled to treble damages under Business and Professions Code

───────────────

[1]     We will refer to plaintiffs by their first names where it is necessary to distinguish between them.

2

section 10242.5 because their cross-appellants' opening brief does not address the evidence on which the referee's section 10242.5 finding was based. We therefore reverse the attorney fees award and affirm the referee's findings on Business and Professions Code section 10242.5.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.    Plaintiffs' mortgage loan.

Plaintiffs owned a home in Tiburon, California from about 1990 until about 2023. As of 2019, the home was encumbered by a mortgage of approximately $5.6 million, which was set to mature in October 2019. To replace that loan, plaintiffs obtained an interest-only bridge loan of $6.1 million from lenders. The loan was for a term of 24 months, at a fixed rate of 8.99 percent annually, with a balloon payment of $6,145,699 due on November 1, 2021.

Plaintiffs missed their April 1, 2020 payment. On May 6, 2020, they entered into a modification agreement with lenders that provided for an additional advance of $120,000 to cover monthly payments and additional costs. The modification agreement also provided that if any payment was more than 30 days late, a "default rate" of 19.50 percent annual interest would apply to the entire unpaid principal balance.

The modification agreement contained two attorney fees provisions. Paragraph 12(b) provided: "[A]ny and all disputes arising or related to this Agreement and/or any of the Loan Documents shall be heard by a referee in accordance with the general reference provisions of California Code of Civil Procedure Section 638 . . . . The parties shall share the cost of the referee and reference proceedings equally; provided that, the referee may

3

award attorneys' fees and reimbursement of the referee and reference proceedings equally; provided that, the referee may award attorneys' fees and reimbursement of the referee and reference proceedings fees and costs to the prevailing party . . . ." Separately, paragraph 13(d) provided: "If any Party takes any legal action . . . against another to enforce any of the terms hereof or because of the breach by any Party of any of the terms hereof, the prevailing party in such action . . . shall be entitled to recover its attorneys' fees, costs and expenses . . . incurred in connection with such action, including any appeal thereof, in addition to all other relief."

Plaintiffs missed their January 2021 payment. Lenders thereafter advised plaintiffs that the default interest rate would apply to the remaining balance, increasing plaintiffs' monthly payments from $46,598 to $101,075. Plaintiffs were unable to make the monthly payments and fell further behind on their loan obligations.

Plaintiffs refinanced the loan with another lender in May 2021. With the proceeds of the new loan, plaintiffs paid off lenders' loan, including accrued interest at the default interest rate.

## II.    The present action.

Plaintiffs filed the present action in July 2021. The operative second amended complaint (complaint) alleged that the default interest charges were void as a penalty under Civil Code section 1671, which prohibits certain "unreasonable" liquidated damages (first cause of action); the loan violated Business and Professions Code sections 10240 to 10248.3 (real property loan law), which impose requirements on loans made or negotiated by real estate brokers (second and third causes of action); and the

4

lenders committed fraud by misrepresenting the loan's late charges (fourth cause of action).

The parties stipulated to the appointment of a referee, who held a three-day evidentiary hearing in April 2023. Nicholas, a semi-retired real estate attorney, represented himself and Sharon at the hearing. In July 2023, the referee issued a statement of decision in which he found for plaintiffs on the first cause of action, concluding that the default interest rate was a penalty barred by Civil Code section 1671. On the second and third causes of action, the referee found for lenders, finding that the real property loan law, specifically Business and Professions Code section 10242.5, did not apply. Finally, the referee found for lenders on the fourth cause of action, finding that plaintiffs had not proved that lenders' actions were deliberately deceitful. The referee therefore awarded plaintiffs default interest payments of $261,489, and provided that "[i]nterest, costs, fees and other ancillary relief may be sought by either side, as may be appropriate, by motion filed within thirty days of the date of this Statement of Decision."

## III. Plaintiffs' motion for attorney fees.

Plaintiffs filed a motion seeking attorney fees of $352,000, calculated as a lodestar fee of $238,400, enhanced by a 1.5 multiplier. Plaintiffs also sought costs of $91,114. Plaintiffs urged that they had prevailed on their core claim that the default interest rate was unlawful, and therefore they were entitled to attorney fees under paragraph 13(d) of the modification agreement. Plaintiffs acknowledged that the Supreme Court had held in *Trope*, *supra*, 11 Cal.4th 274 that a self-represented attorney could not recover prevailing party attorney fees under Civil Code section 1717, but they urged *Trope* did not apply

because they were seeking fees under Code of Civil Procedure section 1021, *not* Civil Code section 1717, and because Sharon was not self-represented. Finally, plaintiffs contended that Nicholas had reasonably spent 298 hours litigating the case, his reasonable hourly rate was $800, and he was entitled to a multiplier of 1.5.

Lenders opposed the attorney fees motion. They urged that plaintiffs were self-represented and thus were not entitled to recover attorney fees under *Trope*. Further, lenders said Nicholas's alleged representation of his wife did not change the analysis because Sharon did not owe Nicholas anything for his representation, and the plaintiffs' interests in the litigation were indivisible. Finally, lenders urged that Nicholas's proposed hourly rate was excessive, a multiplier was unwarranted, and plaintiffs prevailed on only one of their four causes of action.

In February 2024, the referee awarded plaintiffs attorney fees of $251,200 and costs of $91,114, plus interest. The trial court entered judgment on the referee's award, from which both parties timely appealed.

## LENDERS' APPEAL

Lenders' appeal focuses entirely on the award of attorney fees to plaintiffs. Lenders assert that the statutory basis for the attorney fee award was Civil Code section 1717, which the Supreme Court held in *Trope* does not permit an award of attorney fees to a self-represented litigant. Lenders thus assert that the referee erred in awarding attorney fees to Nicholas, who represented himself, and to Sharon, who did not suffer any damages separate from her husband. Alternatively, lenders assert that *Trope* also bars an award of attorney fees to plaintiffs

6

under Code of Civil Procedure section 1021.  For the reasons that follow, we agree.

## I.  Standard of review.

Code of Civil Procedure section 638, subdivision (a), provides that a referee may be appointed by agreement of the parties to "hear and determine any or all of the issues in an action or proceeding, whether of fact or of law, and to report a statement of decision."  The judgment based on a statement of decision following a voluntary general reference is treated as if the action had been heard by the court, and it is reviewed on appeal using the same rules that apply to a decision by the trial court.  (See Code Civ. Proc., § 644, subd. (a); *Stella v. Asset Management Consultants, Inc.* (2017) 8 Cal.App.5th 181, 191; *Barickman v. Mercury Casualty Co.* (2016) 2 Cal.App.5th 508, 516.)

A trial court's determination that a litigant is a prevailing party, along with its award of fees and costs, is generally reviewed for abuse of discretion.  However, where, as here, the question presented is a pure issue of law, our review is de novo. (*Goodman v. Lozano* (2010) 47 Cal.4th 1327, 1332; *Lampkin v. County of Los Angeles* (2025) 112 Cal.App.5th 920, 926.)

## II.  The referee erred in awarding attorney fees to plaintiffs.

### A.  Awards of attorney fees to self-represented parties.

"California follows what is commonly referred to as the American rule, which provides that each party to a lawsuit must ordinarily pay his own attorney fees.  [Citations.]  The Legislature codified the American rule in 1872 when it enacted

7

Code of Civil Procedure section 1021, which states in pertinent part that 'Except as attorney's fees are specifically provided for by statute, the measure and mode of compensation of attorneys and counselors at law is left to the agreement, express or implied, of the parties. . . .' (See, e.g., *Bruno v. Bell* (1979) 91 Cal.App.3d 776, 781 [American rule codified by Code Civ. Proc., § 1021].)" (*Trope*, *supra*, 11 Cal.4th at pp. 278–279.)

The Legislature has since enacted several statutory exceptions to the American rule. As relevant here, Code of Civil Procedure section 1033.5, subdivision (a)(10) provides that attorney fees may be awarded as costs when authorized by "[c]ontract." Separately, Civil Code section 1717, subdivision (a) provides: "In any action on a contract, where the contract specifically provides that attorney's fees and costs, which are incurred to enforce that contract, shall be awarded either to one of the parties or to the prevailing party, then the party who is determined to be the party prevailing on the contract, whether he or she is the party specified in the contract or not, shall be entitled to reasonable attorney's fees in addition to other costs."

In *Trope*, *supra*, 11 Cal.4th at pages 278 to 279, our Supreme Court considered whether a self-represented litigant could recover attorney fees under Civil Code section 1717. There, a law firm represented itself in an action against a former client for unpaid legal fees. (*Trope*, at pp. 277–278.) The law firm prevailed and then sought attorney fees under a provision of its retainer agreement. The trial court denied the fee request, concluding that the law firm could not recover fees because it had represented itself in the litigation. (*Id.* at p. 278.)

The Supreme Court agreed and affirmed the denial of attorney fees. (*Trope*, *supra*, 11 Cal.4th at p. 278.) It noted that

8

Civil Code section 1717 applies to contracts that permit an award of "attorney's fees and costs, which are incurred to enforce that contract." The court reasoned that a "fee" is a " 'recompense for an official or professional service,' " and an "attorney fee[]" is a " '[c]harge to [a] client for services performed.' " (*Trope*, at pp. 279–280.) Accordingly, "the usual and ordinary meaning of the words 'attorney's fees,' both in legal and in general usage, is the consideration that a litigant actually pays or becomes liable to pay in exchange for legal representation. An attorney litigating in propria persona pays no such compensation." (*Id*. at p. 280.) Further, to " 'incur' " a fee is "to become obligated to *pay* it," and thus an attorney litigating in propria persona cannot be said to have "incur[red]" a fee. (*Ibid*.)

The court went on to note that prior to the adoption of Civil Code section 1717 in 1968, every California court to have considered the issue had held that self-represented attorneys could not recover attorney fees because those attorneys did not pay or become liable to pay consideration in exchange for legal representation. (*Trope, supra*, 11 Cal.4th at pp. 280–281.) Specifically, *Patterson v. Donner* (1874) 48 Cal. 369 held that a self-represented attorney could not recover fees under a mortgage that was the subject of the litigation; *Bank of Woodland v. Treadwell* (1880) 55 Cal. 379, 380, held that a creditor who did not pay an attorney to represent it in a foreclosure proceeding was not entitled to recover attorney fees under a provision in a mortgage because "[t]he object of the law allowing counsel fees is . . . to reimburse [the creditor], in a proper amount, for a sum which he pays, or becomes liable to pay"; *City of Long Beach v. Sten* (1929) 206 Cal. 473, held that an attorney representing himself in a condemnation proceeding could not recover attorney

9

fees under former Code of Civil Procedure section 1255a; and *O'Connell v. Zimmerman* (1958) 157 Cal.App.2d 330, 336–337, held that an attorney representing himself in an interpleader action could not recover attorney fees under Code of Civil Procedure section 386.6. (*Trope*, at pp. 280–282.) These cases, the court said, "support our conclusion that the usual and ordinary meaning of the words 'reasonable attorney's fees' is the consideration that a litigant pays or becomes liable to pay in exchange for legal representation." (*Id.* at p. 282.)

Finally, the court noted that awarding fees to attorneys but not to other self-represented litigants "would be to hold that the time and opportunity that an attorney gives up when he chooses to litigate a case in propria persona are somehow qualitatively more important and worthy of compensation than those of other pro se litigants." (*Trope, supra*, 11 Cal.4th at p. 285.) This "would in effect create two separate classes of pro se litigants— those who are attorneys and those who are not—and grant different rights and remedies to each." (*Id.* at p. 277.) Such "disparate treatment" would conflict with the legislative purpose of Civil Code section 1717 and " 'would be viewed by the public as unfair.' " (*Trope*, at p. 286.) The court concluded: " 'In our view, the public perception of fairness in the legal system is of greater moment than a lawyer litigant's claim to an attorney fee award if he elects to represent himself.' " (*Ibid.*)

Fourteen years after *Trope*, the Supreme Court extended its analysis in *Musaelian v. Adams* (2009) 45 Cal.4th 512 (*Musaelian*) to conclude that a self-represented attorney could not recover attorney fees as sanctions. *Musaelian* arose under Code of Civil Procedure section 128.7, subdivision (d), which permits a trial court to sanction a party for filing a frivolous

10

pleading, including by entering " '*an order directing payment to the movant of some or all of the reasonable attorney's fees and other expenses incurred as a direct result of the violation.*' " (*Musaelian*, at p. 516.)  The *Musaelian* court found that "the inclusion of the words 'incur' and 'attorney's fees' in section 128.7 implies an agency relationship under which the client and the party are not one and the same, and out of which the attorney expects remuneration."  (*Id.* at p. 517.)  The court thus held that "an attorney who responds in pro se to a filing abuse may not recover sanctions under section 128.7 in the form of an award of attorney fees."  (*Id.* at p. 520.)

Following *Trope* and *Musaelian*, appellate courts have held that self-represented attorneys may not recover attorney fees under a variety of different statutes.  For example, in *In re Marriage of Erndt & Terhorst* (2021) 59 Cal.App.5th 898, 905, the court held that a self-represented lawyer could not recover attorney fees under Family Code section 271, which permits "an award of attorney's fees and costs" based on "the extent to which any conduct of each party or attorney furthers or frustrates the policy of the law to promote settlement of litigation and, where possible, to reduce the cost of litigation by encouraging cooperation between the parties and attorneys."  Similarly, in *Witte v. Kaufman* (2006) 141 Cal.App.4th 1201, 1207–1209, the court held that self-represented attorneys could not recover prevailing party attorney fees under the anti-SLAPP statute, which provides, in subdivision (c)(1), that "a prevailing defendant on a special motion to strike shall be entitled to recover that defendant's attorney's fees and costs."  (Code Civ. Proc., § 425.16, subd. (c)(1); see also *Ellis Law Group, LLP v. Nevada City Sugar Loaf Properties, LLC* (2014) 230 Cal.App.4th 244 [reversing

attorney fees award under anti-SLAPP statute to self-represented law firm].)  And, in *Argaman v. Ratan* (1999) 73 Cal.App.4th 1173, 1175, 1177, the court held that a self-represented attorney could not recover a monetary discovery sanction under former Code of Civil Procedure section 2023, subdivision (b)(1) (now Code of Civil Procedure section 2023.030, subdivision (a)), which permits the award of "reasonable expenses, including attorney's fees, incurred by anyone as a result of" misuse of the discovery process.

With these principles in mind, we turn to the attorney fees awarded in the present case.

### B. The referee erred by awarding attorney fees to Nicholas.

As noted above, the modification agreement contained two separate attorney fees provisions.  Paragraph 13(d) provided for an award of attorney fees to the prevailing party in an action "to enforce any of the terms hereof or because of the breach by any Party of any of the terms hereof."  Separately, paragraph 12(b) provided that any disputes "arising or related to" the modification agreement would be heard by a referee, who would have discretion to "award attorneys' fees . . . to the prevailing party."

Lenders assert that plaintiffs sought attorney fees under Civil Code section 1717, and thus a fee award was barred by *Trope*.[2]  Alternatively, they assert that even if plaintiffs were

---

[2]     Plaintiffs assert that lenders' position on appeal is inconsistent with their position below.  We do not agree.  In their opposition to plaintiffs' fee motion, lenders argued both that an award of fees was subject to paragraph 12(b), not paragraph 13(d), of the modification agreement, *and* that Civil Code

12

awarded attorney fees under another statute, those fees would still be barred because *Trope* was not solely tethered to Civil Code section 1717, but rather was based on a line of cases holding that self-represented attorneys could not recover attorney fees because they did not pay or become liable to pay consideration in exchange for legal representation. Finally, lenders assert that both plaintiffs were self-represented within the meaning of *Trope* because their interests in the litigation were identical.

Plaintiffs assert that *Trope* does not apply because their fee award was based on Code of Civil Procedure section 1021, not Civil Code section 1717. They further urge that even if Nicholas was self-represented, Sharon was not, and thus she was entitled to recover fees for Nicholas's legal work.

The referee did not specify the statutory basis for the attorney fees award, and thus we cannot determine whether fees were awarded pursuant to Civil Code section 1717 or Code of Civil Procedure section 1021. That issue is irrelevant to our analysis, however, because as we discuss, the referee lacked discretion to award Nicholas attorney fees under either section.

Code of Civil Procedure section 1021 provides that "[e]xcept as attorney's fees are specifically provided for by statute, the measure and mode of compensation of attorneys and counselors at law is left to the agreement, express or implied, of the parties." Section 1021 operates in conjunction with Code of Civil Procedure

section 1717 applied regardless of the contractual provision at issue. This is entirely consistent with their appellate claim that the fee award is subject to Civil Code section 1717. We therefore reject plaintiffs' contention that lenders "invited" any error with regard to the fee award.

section 1033.5, subdivision (a)(1), which provides:  "The following items are allowable as costs under Section 1032:  . . . (10) *Attorney's fees*, when authorized by any of the following: (A) Contract.  (B) Statute.  (C) Law."  (See *Santisas v. Goodin* (1998) 17 Cal.4th 599, 607, fn. 4 ["Code of Civil Procedure section 1021 does not independently authorize recovery of attorney fees.  Rather, consistent with subdivision (a)(10) of Code of Civil Procedure section 1033.5, Code of Civil Procedure section 1021 recognizes that attorney fees incurred in prosecuting or defending an action may be recovered as costs only when they are otherwise authorized by statute or by the parties' agreement"].)

Plaintiffs assume that self-represented attorneys may recover fees under Code of Civil Procedure sections 1021 and 1033.5, but they cite no authority to support that proposition.  We conclude otherwise.  As noted above, our Supreme Court held in *Trope* that the plain language of Civil Code section 1717 precludes an award of attorney fees to a self-represented attorney because the "usual and ordinary meaning of the words 'attorney's fees,' both in legal and general usage, is the consideration that a litigant *actually pays* or *becomes liable to pay* in exchange for legal representation."  (*Trope*, *supra*, 11 Cal.4th at p. 280, italics added.)  Like Civil Code section 1717, Code of Civil Procedure sections 1021 and 1033.5 both refer to "attorney's fees."   We can imagine no reason—and plaintiffs suggest none—why the Legislature would have intended that phrase to have a different meaning in Code of Civil Procedure sections 1021 and 1033.5 than it does in Civil Code section 1717.

*Trope* also concluded that it would be " 'palpably unjust' " to permit self-represented attorneys to receive compensation

14

pursuant to Civil Code 1717 for their time spent litigating their own cases, but not to allow self-represented non-attorneys to do the same. (*Trope*, *supra*, 11 Cal.4th at p. 286 [" 'The system would be one-sided, and would be viewed by the public as unfair, if one party (a lawyer litigant) could qualify for a fee award without incurring the potential out-of-pocket obligation that the opposing party (a nonlawyer) ordinarily must bear in order to qualify for a similar award [i.e., without paying or becoming liable to pay consideration in exchange for legal representation]. Moreover, if both parties opt to litigate pro se, it would be palpably unjust for one of them (the lawyer litigant) to remain eligible for an attorney fee award, while the other becomes ineligible. . . . [¶] . . . [¶] In our view, the public perception of fairness in the legal system is of greater moment than a lawyer litigant's claim to an attorney fee award if he elects to represent himself' "].) Again, we can think of no reason, and plaintiffs suggest none, why the same analysis would not apply equally to Code of Civil Procedure sections 1021 and 1033.5.

For all the foregoing reasons, we conclude that Nicholas, as a self-represented attorney, cannot recover attorney fees under either Civil Code section 1717 or Code of Civil Procedure sections 1021 and 1033.5.

### C. The referee also erred by awarding attorney fees to Sharon.

Having concluded that Nicholas could not recover attorney fees based on his own legal work, we next consider whether Sharon could recover attorney fees based her husband's work.

The Courts of Appeal have reached somewhat inconsistent results in deciding whether nonattorneys represented by attorney spouses in joint litigation are "self-represented" within the

15

meaning of *Trope*. In *Gorman v. Tassajara Development Corp.* (2009) 178 Cal.App.4th 44 (*Gorman*), an attorney and his wife, jointly represented by the husband's law firm, brought a construction defect action against the contractors and subcontractors who built the couple's home. (*Id.* at pp. 53–54.) After the plaintiffs settled with a number of contractors, they sought attorney fees under a fee provision in the construction contract. (*Id.* at p. 56.) The trial court awarded only about one-third of the fees sought, and the plaintiffs appealed, urging that the fee award was inadequate. (*Id.* at pp. 56–57.) The Court of Appeal held that the husband could recover fees for work done by other members of his firm, but not for his own legal work. (*Id.* at pp. 96–97.) The wife also could not recover for her husband's legal work even though she allegedly had entered into a written retainer agreement with his law firm. The court explained: "We can certainly imagine cases in which a true attorney-client relationship exists between spouses. However, in this case, husband and wife sued for and obtained recovery for the defective construction of their residence. There is no indication that [wife] suffered any damages apart from those suffered by her husband. Their interests in this matter appear to be joint and indivisible. There is no claim that [husband] spent extra time in this case representing his wife in addition to the time he spent representing himself. There is no claim that each of them owes half his fees. Their community estate is liable for their contracts. (Fam. Code, § 910, subd. (a).) Since [husband's] billable hours appear to be entirely attributable to representing his common interests with [wife], we conclude that the rule of *Trope* applies to this situation." (*Id.* at p. 95.)

16

The Court of Appeal reached a different result in *Rickley v. Goodfriend* (2012) 207 Cal.App.4th 1528 (*Rickley*). There, the plaintiffs, a married couple, brought nuisance actions against their neighbors for carrying out an unpermitted remodel and for encroaching on and burying construction debris on the plaintiffs' property. (*Id.* at pp. 1530–1531.) One of the plaintiffs was an attorney, and she represented herself and her wife in the litigation. The trial court ordered the defendants to abate the nuisance; when they failed to do so, the plaintiffs filed a contempt action. The trial court found the defendants guilty on three counts of contempt, fined them, and ordered one defendant to spend three days in jail. The plaintiffs then sought their attorney fees associated with prosecuting the contempt action, including fees incurred in connection with legal work performed by the attorney-spouse. (*Ibid.*) The trial court denied the fee request on the ground that the plaintiffs were self-represented, but the Court of Appeal reversed. (*Id.* at p. 1532.) The appellate court noted that although the plaintiffs had initiated the nuisance proceeding to protect their property and economic interests, the subsequent contempt proceeding was a quasi-criminal proceeding, in which the plaintiffs were assisting the court and the public interest by seeking to enforce a court order. (*Id.* at p. 1537.) The attorney-spouse, thus, "can be said to be vindicating an important public interest by ensuring [defendants'] compliance with the contempt order." (*Ibid.*) Under these circumstances, the court said, "the dispositive factor in awarding fees is not whether [the spouses] were liable for or obligated to pay fees, but whether there was an attorney-client relationship between [the attorney-spouse] as an attorney and [the couple] as homeowners." (*Id.* at pp. 1537–1538.)

17

In so concluding, the *Rickley* court rejected *Gorman*'s conclusion that the result depended on the married couple's unity of interest in the litigation. The court explained: "[W]e do not feel that identical damages, nor joint and indivisible interests between the spouse-attorney and the other spouse defeat the attorney-client relationship. Instead, we must determine whether [the nonattorney spouse] consulted [the attorney spouse] in her professional capacity and whether their relationship in terms of this lawsuit was for the purposes of obtaining legal advice. As the record indicates, the trial court did not make a determination about whether an attorney-client relationship existed. The matter therefore must be remanded before the issue of entitlement to fees can be adjudicated." (*Rickley*, *supra*, 207 Cal.App.4th at p. 1538.)

The Court of Appeal rejected *Rickley*'s analysis and adopted *Gorman*'s in *Gillotti v. Stewart* (2017) 11 Cal.App.5th 875 (*Gillotti*), review granted Aug. 23, 2017, S242568, review dism. Mar. 21, 2018. *Gillotti* was a construction defect action brought by an attorney and his wife. After the trial court entered judgment for the homeowners against the builder, the homeowners sought attorney fees under Civil Code section 1717 for legal work done by the husband on behalf of himself and his wife. (*Gillotti*, at p. 904.) The trial court found that neither spouse could recover attorney fees based on the husband's legal work, and the Court of Appeal agreed. In so finding, the court said the rule set out in *Rickley* applied only in cases where self-represented parties were assisting the court and the public interest. (*Id.* at p. 906.) *Rickley* did not apply to the case before the court because "here there is . . . no public interest being vindicated." (*Ibid.*)

18

Finally, in *Gogal v. Deng* (2025) 112 Cal.App.5th 1161 (*Gogal*), the Court of Appeal attempted to reconcile *Gorman* and *Rickley* in the context of a retaliatory eviction claim brought jointly by a husband and wife against their landlord and litigated by the husband, an attorney. After prevailing on the retaliatory eviction claim, the spouses sought to recover half of the husband's legal fees, which they attributed to his representation of his wife. (*Id.* at p. 1165.) The trial court followed *Gorman* and concluded that the wife could not recover fees because the spouses' interests were " 'joint and indivisible.' " (*Ibid.*)

The Court of Appeal held that whether the wife could recover legal fees turned on whether " 'a true attorney-client relationship exist[ed] between [the] spouses.' " (*Gogal, supra,* 112 Cal.App.5th at p. 1165.) To answer that question, the trial court should consider a number of factors, including whether the non-attorney spouse consulted the attorney-spouse "in his or her 'professional capacity,' " whether the non-attorney spouse was obligated to pay fees, whether "the record supports a concern of 'self-dealing' by the attorney," whether the spouses had a "joint claim," and "whether the attorney-spouse has an indivisible pecuniary interest in the outcome of the litigation." (*Id.* at pp. 1168–1169.) In the absence of "other evidence"—including "any facts tending to show that the nonattorney spouse played a significant substantive role in the litigation rather than merely deferring to the other spouse"—a nonattorney spouse "with totally joint interests and seeking only coincident damages will generally be unable to establish a true attorney-client relationship." (*Id.* at p. 1172.) In the case before it, the appellate court found that the spouses did not introduce "key evidence" of "[the wife's] role in the litigation, the circumstances of her

19

consultations with [the husband], and their purpose. . . .  Simply put, [the spouses] did not introduce evidence sufficient to overcome the natural inferences that arise from an attorney-spouse pursuing an entirely joint claim with entirely coincident damages, evidence that is necessary to demonstrate a bona fide attorney-client relationship in this context." (*Ibid.*)  The court thus affirmed the denial of the wife's attorney fee request.  (*Ibid.*)

To the extent that *Rickley* and *Gogal* hold that a non-attorney's ability to recover attorney fees for legal work performed by his or her spouse turns on whether a "true" attorney-client relationship exists between the spouses, we disagree.  We assume that in most cases in which attorneys represent themselves and their spouses, the representation is a "true" one in the sense that the non-attorney spouse has authorized the attorney-spouse to act on his or her joint behalf and intends to be bound by the attorney-spouse's actions.  The relevant question under *Trope*, however, is not the scope of an attorney's authorization to act, but whether a party is self-represented.  (*Trope, supra*, 11 Cal.4th at p. 277 [considering whether fees may be awarded to attorney who "chooses to litigate in propria persona"].)

We believe that whether a litigant represented by an attorney-spouse is "self-represented" within the meaning of *Trope* depends on whether the litigation concerns a commonly held interest or asset.  In *Witte v. Kaufman, supra*, 141 Cal.App.4th at p. 1210, the court held that a law firm represented by several of its attorneys was in propria persona because "[t]he attorneys of [the law firm] are the law firm's product.  When they represent the law firm, they are representing their own interests.  As such, they are comparable to a sole practitioner representing himself or

20

herself." (*Id.* at p. 1211.)  We think the same analysis applies when attorneys represent themselves and their spouses in litigation concerning a community property asset.  A community property asset is not owned by the spouses individually, but by the marital community.  Likewise, "the fruits of the community's expenditures of time, talent, and labor are community property." (*In re Marriage of Dekker* (1993) 17 Cal.App.4th 842, 850.) Indeed, "the basic concept of community property is that marriage is a partnership where spouses devote their particular talents, energies, and resources to their common good.  [Citation.] Acquisitions and gains which are directly or indirectly attributable to community expenditures of labor and resources are shared equally by the community." (*Id.* at pp. 850–851.) Thus, when an attorney-spouse represents both himself and his spouse in litigation over a community asset, *both* spouses are self-represented because a community asset—the attorney-spouse's labor—is being applied for the benefit of the community as a whole.

It is in this sense that we believe the *Gorman* and *Gillotti* courts found no "true attorney and client relationship[s]" existed between the spouses.  The relevant issue as defined in those cases was not whether the nonattorney-spouse had formally retained the attorney-spouse or played an active role in managing the litigation, but whether the spouses had a common interest in the subject of the litigation.  Because the spouses *did* have a common interest—that is, because their interests were "joint and indivisible" as co-members of the marital community (*Gorman*, *supra*, 178 Cal.App.4th at p. 95)—the community as an entity was effectively self-represented.  (*Ibid.*; see also *Gillotti*, *supra*, 11 Cal.App.5th at pp. 904–906.)

21

In the present case, although Sharon asserted that she "retained" Nicholas to represent her in this action, neither she nor Nicholas asserted that she had an interest in the property that was separate from Nicholas's. To the contrary, Sharon testified at her deposition that she did *not* have a separate property interest in the home, which she and Nicholas held as community property. She also testified that she had not paid, and did not owe, any fees in connection with Nicholas's representation in this case. And, there is no indication that the assets that were used to repay the loan, including the interest charges, were anything other than community property, or that any of Nicholas's billable hours in this case were attributable to representing anything other than plaintiffs' common interest. As such, both Nicholas and Sharon were effectively self-represented within the meaning of *Trope*, and neither could recover attorney fees based on the reasonable value of Nicholas's legal work.

Plaintiffs urge that Nicholas was not representing solely community interests because Sharon had separate property that could have been seized to satisfy her joint and several liability under the note. But the lenders' note was secured by plaintiffs' home, which was a community property asset. Because the home's value was significantly greater than the amount of the loan—the loan was for $6.2 million, and the home sold for approximately $12 million—Sharon's separate property was not at risk.

For all the foregoing reasons, we conclude that neither Sharon nor Nicholas may recover attorney fees based on Nicholas's legal work. We therefore reverse the award of attorney fees to plaintiffs.

# PLAINTIFFS' CROSS-APPEAL

Plaintiffs' cross-appeal pertains solely to the referee's finding on the second cause of action for violations of Business and Professions Code section 10242.5. That section limits the late fees that may be applied to home mortgage loans negotiated by mortgage loan brokers. (See *Akopyan v. Wells Fargo Home Mortgage, Inc.* (2013) 215 Cal.App.4th 120, 131–135.) Plaintiffs alleged that the modification agreement violated section 10242.5 because the default interest rate exceeded the statutory maximum, and thus that they were entitled to treble damages.

The referee found that plaintiffs had not established that Business and Professions Code section 10242.5 applied because they did not demonstrate that their claims arose out of a loan " 'made or negotiated by real estate brokers acting within the meaning of subdivision (d) of [Business and Professions Code] section 10131 or subdivision (b) of [Business and Professions Code] section 10240.' " Instead, the referee said, "The record reflects that, for the most part, Mr. Honchariw 'negotiated' the terms of the loan himself."

Plaintiffs challenge the referee's finding, urging that they "introduced dispositive evidence, including defendants' own admissions, that the loan was negotiated by brokers." However, plaintiffs' opening brief does not contain a statement of facts, and nearly all of plaintiffs' citations in support of their cross-appeal are to an appendix containing copies of some of the exhibits offered at the evidentiary hearing. Plaintiffs do not provide citations to demonstrate that these exhibits were authenticated or that the referee admitted them into evidence. Further, with just a few exceptions, they do not cite to testimony concerning the

23

contents of these documents.  And, plaintiffs do not discuss any of the lenders' evidence on which the referee relied.

We conclude that plaintiffs have forfeited their challenge to the referee's findings because their discussion of the relevant evidence is wholly insufficient to permit meaningful appellate review.  "When an appellant contends there is insufficient evidence to support a finding of fact, we apply the substantial evidence standard of review.  (*Schmidt v. Superior Court* (2020) 44 Cal.App.5th 570, 581.)  Under that standard of review, 'the power of an appellate court begins and ends with the determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the finding of fact.' (*Grainger v. Antoyan* (1957) 48 Cal.2d 805, 807, italics omitted (*Grainger*).) . . . .'

"In every appeal, the appellant has the duty to fairly summarize all of the facts in the light most favorable to the judgment.  (*Myers v. Trendwest Resorts, Inc.* (2009) 178 Cal.App.4th 735, 739; *Boeken v. Philip Morris, Inc.* (2005) 127 Cal.App.4th 1640, 1658.)  'Further, the burden to provide a fair summary of the evidence "grows with the complexity of the record.  [Citation.]" ' (*Boeken*, at p. 1658, citing *Western Aggregates, Inc. v. County of Yuba* (2002) 101 Cal.App.4th 278, 290.)  To meet its burden on appeal to show a finding of fact is not supported by substantial evidence, appellants cannot recite only evidence in their favor, but must ' "set forth in their brief *all* the material evidence on the point and *not merely their own evidence.*  Unless this is done the error is deemed to be waived." [Citations.]' (*Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881 (*Foreman & Clark Corp.*).)

"When an appellant's opening brief states only the favorable facts, ignoring evidence favorable to respondent, the appellate court may treat the substantial evidence issues as waived and presume the record contains evidence to sustain every finding of fact.  (*Delta Stewardship Council Cases* (2020) 48 Cal.App.5th 1014, 1072; see also *Doe v. Roman Catholic Archbishop of Cashel & Emly* (2009) 177 Cal.App.4th 209, 218 [appellant waived substantial evidence challenge because 'his opening brief sets forth only his version of the evidence, omitting any reference to the conflicting evidence submitted by [the respondent]'].)  'As with all substantial evidence challenges, an appellant challenging [a finding of fact] must lay out the evidence favorable to the other side and show why it is lacking.  Failure to do so is fatal.  A reviewing court will not independently review the record to make up for appellant's failure to carry his burden.' (*Defend the Bay v. City of Irvine* (2004) 119 Cal.App.4th 1261, 1266.)"  (*Slone v. El Centro Regional Medical Center* (2024) 106 Cal.App.5th 1160, 1173–1174; see also *Oakland Bulk & Oversized Terminal, LLC v. City of Oakland* (2025) 112 Cal.App.5th 519, 544 [unless appellant sets forth all material evidence, "we may treat the substantial evidence issues as waived and presume the record contains evidence to sustain every finding of fact"].)

Plaintiffs' summary of the evidence presented at the three-day evidentiary hearing is, as lenders urge, manifestly insufficient to carry their appellate burden.  Plaintiffs' briefs contain no discussion—none—of the lenders' evidence on which the referee relied.  At best, plaintiffs discuss only their own evidence—and even that evidence is of uncertain evidentiary value because we cannot determine from plaintiffs' record cites

whether a foundation was laid for the introduction of plaintiffs' exhibits, whether the exhibits were admitted into evidence, and if so, if they were admitted for the truth of the matters contained therein. Accordingly, we conclude that plaintiffs have forfeited their substantial evidence challenge.

Plaintiffs contend they were not required to discuss lenders' evidence because their cross-appeal raises solely a question of law, not a substantial evidence challenge. But that contention presupposes that all the relevant facts were undisputed. They were not. Plaintiffs contend lenders violated Business and Professions Code section 10242.5 because there was "overwhelming" evidence that PMF Managers, Inc. "actually acted [as] and was paid as a broker." Lenders do not concede this issue; to the contrary, they urge that there was "a wealth of evidence at trial" that "(1) no broker was involved in negotiating the subject Loan, (2) the [plaintiffs] fully understood that there was no broker involved, [and] (3) the alleged broker here, [PMF Managers, Inc.], was not licensed as a broker, based upon advice of counsel that [it] did not broker loans and, therefore, did not need a license."

In short, plaintiffs' claim turns on disputed facts, and thus they have forfeited their appellate claims by failing to accurately summarize all the evidence presented at the evidentiary hearing.

26

## DISPOSITION

The attorney fees award to plaintiffs Nicholas and Sharon Honchariw is reversed, and the judgment is otherwise affirmed. On remand, the trial court is directed to enter an amended judgment omitting an award of attorney fees. Defendants and appellants PMF CA REIT, LLC, et al. are awarded their appellate costs.

**CERTIFIED FOR PARTIAL PUBLICATION**

EDMON, P. J.

We concur:

ADAMS, J.

HANASONO, J.

27